Stanford SWIGGETT, Plaintiff,

v.

Donald E. WATSON, a/k/a Gene Watson, Individually and as Constable of the County of New Castle, Delaware, Court No. 13, Robert J. Voshell, Individually and as Director of the Division of Motor Vehicles, and "Laci" d/b/a Naamans Exxon, Naamans and Ridge Roads, Claymont, Delaware, Defendants.

Civ. A. No. 76–405.

United States District Court,
D. Delaware.

Nov. 28, 1977.

Douglas A. Shachtman, Community Legal Aid Society, Wilmington, Del., David A. Scholl, Community Legal Services, Philadelphia, Pa., for plaintiff.

Donald E. Watson, pro se.

Regina M. Small, Deputy Atty. Gen., Wilmington, Del., for defendant Voshell.

Laszlo Kutvoelgyi, pro se.

## OPINION

STAPLETON, District Judge:

This civil rights action, brought under 42 U.S.C. § 1983, challenges the constitutionality of Section 3901 of Title 25 of the Delaware. Code insofar as that statute authorizes the sale of motor vehicles to satisfy a repairman's lien. Jurisdiction is based on 28 U.S.C. §§ 1343(3) and (4). Damages are sought on behalf of the individual plaintiff. Injunctive and declaratory relief are sought on his behalf as well as on behalf of the class which he purports to represent.

During the summer of 1975, Stanford Swiggett, the named plaintiff, left his malfunctioning automobile to be repaired at Naamans Exxon, a service station operated by defendant Laszlo Kutvoelgyi, a/k/a Laci ("Kutvoelgyi"). Kutvoelgyi rendered a bill of at least $200,[1] of which Swiggett eventually paid $66. Kutvoelgyi refused to release the automobile upon this partial payment.

In April of 1976, Swiggett learned that Kutvoelgyi had sold the automobile a month earlier pursuant to the Delaware Lien Law. Kutvoelgyi had engaged defendant Donald Watson, a/k/a Gene Watson ("Watson") to conduct the sale. At the sale Kutvoelgyi himself purchased the auto-

---

1. This figure is in dispute.

mobile for the amount due, and subsequently resold it at a profit.

Watson mailed a notice of the sale to Swiggett by certified mail (return receipt requested). No mail receipt was ever returned to Watson. Watson also gave notice of the sale pursuant to the provisions of the statute by posting handbills in five public places and by advertising in a newspaper in New Castle County, the county in which the sale was to take place. 25 Del.C. § 3901(b). Swiggett, a Pennsylvania resident, received no actual notice of the sale until after it had occurred.

Defendant Robert Voshell, Director of the Division of Motor Vehicles, by his agents, transferred the title of the automobile after the initial sale, to Kutvoelgyi pursuant to 21 Del.C. § 2506.

Before me now is plaintiff's motion for class determination and motion for partial summary adjudication.

## I. CLASS DETERMINATION.

Swiggett seeks to have this certified as a class action for the benefit of those individuals whose motor vehicles have been sold pursuant to the Delaware Lien Law in the past, or who are threatened or may be subject to such sales of their vehicles in the future. Swiggett asserts that all of the prerequisites of Rule 23(a), as well as the requirements of Rule 23(b)(2), have been met. Those rules provide:

(a) *Prerequisites to a Class Action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

(b) *Class Actions Maintainable.* An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

\* \* \* \* \* \*

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; . . .

While exact numbers have not been ascertained, defendant Voshell acknowledges that the Division of Motor Vehicles currently processes transfers of title pursuant to 25 Del.C. § 3901; and it appears that the volume of such transfers has been sufficient in the past to cause his department to issue and distribute special forms applicable only to transfers effected under that statute. While the exact number of past and potential transactions under the statute cannot be ascertained or predicted from the Department's records [2] it is apparent the number is substantial. I, therefore, find that this action comports with the numerosity requirements of Rule 23(a)(1).

Rule 23(a)(2) requires common issues of law or fact for members of the class. There is no question that the challenge to the constitutionality of the Delaware statute presents a common question of law. It is also evident that the material facts of each case are or will be the same: each class member owed or will owe a bill to repairmen, who in turn sold or will sell the vehicle pursuant to the statutory scheme, whereupon title was or will be transferred in accordance with the procedure for the Department of Motor Vehicles.

The named representative of the class has a fact situation that is squarely within the above model, and his claim is, therefore, typical of the claims of the class, and not antagonistic to its interests. I also have no doubts about the competency and experience of plaintiff's counsel in conduct-

**2.** Defendant Voshell's answers to plaintiff's second set of interrogatories at 1(a) indicates that this information is not available since sub-

categories of the number of vehicles that are registered are not compiled.

ing this type of litigation. I, therefore, find that the requirements of Rule 23(a)(3) and (4) have been met.

■ Plaintiff also contends and defendant Voshell concedes that the prerequisites of Rule 23(b)(2) have been met. I agree that defendants have acted on grounds generally applicable to the class, when they have conducted and validated repairmen's lien sales. Injunctive or declaratory relief would be appropriate with respect to the class as a whole.

I conclude that this cause may be maintained as a class action.

## II. THE CONSTITUTIONALITY OF THE DELAWARE LIEN LAW.

The remaining motion is for partial summary adjudication. In this case the granting of that motion will turn on a determination of whether the Delaware statute in question comports with the due process requirements of the Fourteenth Amendment of the United States Constitution. If it does not, and the statute is unconstitutional on its face, then plaintiff's motion must be granted. In light of the recent decision in *Parks v. Ford*, 556 F.2d 132 (3rd Cir. 1977) there can be no doubt that the sale provisions of the Delaware Lien Law are unconstitutional. That law, 25 Del.C. § 3901, provides:

*Collection of lien by public sale; notice of sale; warrant for seizure; disposition of proceeds; loss of lien.*

(a) Any hotelkeeper, innkeeper, garage owner or other person who keeps a livery or boarding stable or garage and, for price or reward at such stable or garage, furnishes food or care for any horse or has the custody or care of any carriage, cart, wagon, sleigh, motor vehicle or other vehicle or any harness, robes or other equipments for the same shall have a lien upon such horse, carriage, cart, wagon, sleigh, motor vehicle or other vehicle, harness, robes or equipments and the right to detain the same to secure the payment of such price or reward.

(b) The lienor may, subject to the provisions hereinafter contained, after the expiration of 30 days from the time the same or any part thereof became due and payable, the same remaining unpaid in whole or in part, sell the property upon which he has such lien at public sale at such livery or boarding stable or garage to the highest and best bidder or bidders therefor, first giving at least 10 days notice of such sale by handbills posted in 5 or more public places in the county in which the sale is to be had and by advertisement in a newspaper published in the county, describing the property to be sold and naming the day, hour and place of sale thereof.

(c) The lienor may apply the money arising from the sale to the payment of the amount then remaining due, including therein compensation at the same rate as such stipulated price or reward for food, care or custody furnished or bestowed up to the time of sale, together with the costs and expenses of sale.

(d) In case, either before or after the price or reward has become due and payable, the keeper of such stable or garage has parted with the possession or custody of the property subject to such lien, he may, if the contract for food, care or custody was made with the owner of the aforementioned property at any time within the space of 10 days from the time of such parting with the possession or custody thereof, make an affidavit, to be filed in the office of a justice of the peace of the county in which such stable or garage is situated, describing such property and stating the amount of such price or reward then remaining due and payable, from whom owing and that the same is justly and truly due. Thereupon, the justice of the peace shall forthwith issue to a constable a warrant for the seizure of such property and for the delivery thereof to the keeper of such stable or garage. The constable shall forthwith, at any place within such county, seize and deliver such property pursuant to such warrant. Thereafter the keeper of such stable or garage may, unless there has been a previous execution and levy, for

an amount exceeding the value of the property, or unless such property has been sold fairly for a valuable consideration and delivered to the purchaser after the keeper of such stable or garage has parted with its possession or custody and before such seizure thereof, sell the same in manner aforesaid, after giving notice as aforesaid, and may apply the money arising from such sale in manner aforesaid.

(e) The balance, if any, of the proceeds of sale shall be paid to the owner or owners of the property sold but, in case such owner or owners cannot be found, such balance shall be deposited in the Farmers' Bank of the State of Delaware for the county in which such sale has been had to the credit of such owner or owners.

(f) If the owner or owners of the property, subject to such lien and detained by or seized and delivered to the keeper of such stable or garage, demand, at any time after such price or reward has in whole or in part become due and payable and before sale, such property from the keeper of such stable or garage, the lien shall be lost unless the keeper of such stable or garage, within the space of 30 days from the making of such demand upon him, sells such property under and in accordance with the provisions contained in this section.

## A. State Action.

Plaintiff maintains that by selling motor vehicles and transferring the title thereto under Section 3901, defendants "under color of the Delaware statutory provisions . . . have deprived the plaintiff and the members of his class of rights secured to them by the United States Constitution."

■ While repairmen's liens are creatures of the common law, repairmen were not authorized at common law to sell property in satisfaction of a lien.[3] The right to sell is a creature of statute. Accordingly, to paraphrase Judge Garth's analysis in

*Parks v. Ford*, 556 F.2d 132, 141 (3rd Cir. 1977):

[b]y thus authorizing sales to take place, directing how they are to be carried out, and giving them the effect of judicial sales, [Delaware] has quite literally delegated to private individuals, powers, "traditionally exclusively reserved" to sheriffs and constables. In our view, that grant of power has the same effect for state action purposes as if [Delaware] had endowed private individuals with the same authority to arrest suspects and to execute warrants as state and local police possess. . . . As a result, we have no doubt that state action exists when a garageman sells a customer's vehicle pursuant to [25 Del.C. § 3901].

While the Delaware Lien Law is not identical to the Pennsylvania statute before the Court in *Parks* in expressly making the repairmen's power to sell as conclusive as a sheriff's or constable's, the effect of the two statutes is the same. The Delaware statute provides that the repairman shall have a lien upon the property, and that the lienor may sell that property to satisfy the amount due. Here as in *Parks*, state action is present in the sale provisions of the state statute.

## B. The Requirements of Procedural Due Process.

■ As in *Parks*, the challenged statute results in a *permanent* deprivation of property, and this fact is of particular significance since (1) the garageman need not file a bond to protect the vehicle owner, (2) the vehicle will typically be sold for a price well below its market value, and (3) any vehicle, no matter how valuable, may be sold to satisfy any repairmen's lien, no matter how small.

Given the dire consequences which attend sales under these circumstances, the Court of Appeals in *Parks* held that fundamental fairness required that the owner be afforded greater procedural safeguards than the Pennsylvania statute provided. The same

---

**3.** *See Bennett v. Brittingham*, 3 W.W.Harr. 519, 33 Del. 519, 140 A. 154 (Del.Super.1927); *Younger v. Plunkett*, 395 F.Supp. 702, 707 n. 6 (E.D.Pa.1975); 17 R.C.L. Liens §§ 17, 25.

deficiencies pointed out by the Court exist in the case of a sale under Section 3901 and, indeed, this Delaware statute provides the owner with even less protection.

Under the Pennsylvania statute a garageman who wished to sell a customer's vehicle had to serve the owner with a verified, itemized statement of the services performed and the amount demanded. The Delaware statute does not require this initial step of a sworn, detailed statement of the repairman's claim.

In Delaware, as in Pennsylvania, the repairman may proceed with the sale without obtaining any judicial authorization, without filing a bond, and without providing a hearing at which the customer has an opportunity to challenge the amount charged and due.

The absence of any judicial supervision or a pre-deprivation hearing is not cured by Section 3902 of Title 25 of the Delaware Code which provides that the owner, upon posting a bond, may institute a replevin action. The Pennsylvania statute examined in *Parks* had the same feature and it was found not to afford sufficient protection to save the statutory scheme.

It follows, *a fortiori*, from the *Parks* decision that the sale provisions of Section 3901 violate the Due Process Clause of the Fourteenth Amendment, and are unconstitutional on their face. Hence plaintiff's motion for partial summary judgment will be granted, and defendants will be enjoined from selling or causing the sale of motor vehicles pursuant to 25 Del.C. § 3901 and from causing titles to be transferred as a result of any such sales.

Submit order.