**Benjamin PHELPS et al.**

v.

**Patricia R. HARRIS, Secretary of Health, Education & Welfare.**

**Civ. No. H 79–387.**

United States District Court, D. Connecticut.

May 5, 1980.

William A. Dombi, Charles C. Hulin, Legal Assistance to Medicare Patients, Willimantic, Conn., Judith I. Solomon, New Haven, Conn., for plaintiff Phelps and intervening plaintiffs.

George J. Kelly, Jr., Asst. U. S. Atty., Richard Blumenthal, U. S. Atty. for the District of Connecticut, Hartford, Conn., Clifford Pierce, Asst. Regional Atty., U. S. Dept. of Health, Ed. & Welfare, Boston, Mass., for defendant.

JOSÉ A. CABRANES, District Judge:

## RULING ON PENDING MOTIONS

Plaintiff Benjamin Phelps originally brought this putative class action to enjoin two alleged violations of the due process rights of Medicare patients whose medical insurance claims under Part B of the Medicare program are denied by hearing officers appointed by the insurance carriers who administer the program. The plaintiff alleged that the Part B hearing officers, who in effect hear appeals from the denials of patients' claims by the insurance carriers, engage in the practices of (1) making *ex parte* contacts with consulting physicians (some of whom are employed by the carriers) and relying upon such contacts in deciding cases, and (2) applying Medicare policy, as published in the manuals of the Health Care Financing Administration ("HCFA") of the Department of Health, Education and Welfare ("HEW"), to the claims of individual Medicare patients without regard to the actual facts presented by those claims. (Complaint ¶ 3).

At oral argument on the pending motions, plaintiff's counsel conceded that the defendant had taken substantial measures to prevent hearing officers from adjudicating Part B cases on the basis of *ex parte* contacts—*viz.*, consultations with physicians which were not part of the record and which the claimant had no opportunity to rebut. That concession strongly suggests that the plaintiff has yielded that claim on grounds of mootness.[1] However, the plaintiff continues to press the claim that hear-

---

1. The plaintiff's apparent abandonment of this claim is reflected in the following exchange at oral argument on the pending motions:

    The Court: . . . The question you've raised here, as I understand it, is you have attacked the practice, apparently now terminated, of consulting physicians off the record and then making determinations on the basis of reports received by hearing officers and not included in the record, isn't that—

    Mr. Dombi: No, your Honor. That was one of our claims, and we would have to concede that the defendant has made some admirable efforts to remedy that problem in the recent weeks.

    However, in our complaint it states in paragraph 3, the second sentence of paragraph 3, "It is also the practice of Part B hearing officers to apply Medicare policy, as published in the Health Care Financing Administration Manuals, to an individual's claim without regard to the actual facts presented by the Claimant."

    \* \* \* \* \* \*

    The Court: . . . Now, as I understand it, your argument is that this policy, this Medicare policy that hearing officers must look to these manuals without regard to actual facts, violates Mr. Phelps' rights and that, in fact, were he to go back to a hearing officer he would be subject to this arguably unlawful practice?

    Mr. Dombi: Right, your Honor.

    Transcript of Oral Argument, pp. 21–23. In view of this representation, the court treats the plaintiff's claim, for purposes of this ruling, solely as one attacking the policy of applying the provisions of HCFA manuals to individual claims without regard for the facts of individual cases. The plaintiff is not precluded, however, from presenting evidence concerning *ex*

ing officers blindly apply the policies embodied in HCFA manuals and ignore the evidence adduced at hearings before them in rendering their decisions, and that this practice violates the rights of Phelps, the applicants for intervention and the other members of the class which Phelps seeks to represent.[2]

Before the court are the defendant's motion for reconsideration of Judge Blumenfeld's December 28, 1979 ruling denying the Secretary's motion to dismiss the action; two motions for permissive intervention, pursuant to Rule 24(b), Fed.R.Civ.P.,[3] together with the defendant's motion to dismiss the complaints of the prospective intervenors; and the plaintiff's motion for class certification, under Rule 23(c)(1), Fed. R.Civ.P. For the reasons set forth below, the court finds that the action remains a viable "case" or "controversy" within the meaning of Article III of the United States Constitution, so that it should not be dismissed; that the applicants for intervention should be permitted to enter the case as plaintiffs; and that a class consisting of all Connecticut residents who have been denied benefits pursuant to decision of Part B hearing officers should be certified.[4]

### 1. Defendant's Request for Reconsideration of the Denial of Her Motion to Dismiss

In ruling on the defendant's motion to dismiss, Judge Blumenfeld rejected the argument that plaintiff Phelps lacked standing to bring this action because he had suffered no actual injury as a result of the adverse decision of the Part B hearing officer who heard his case. The court noted that the hearing officer had directed the

insurance carrier to withdraw its request that the plaintiff refund the benefits he received on the disputed claim, but held that this did not establish lack of standing, because the plaintiff's complaint still alleged a prospective economic injury as a consequence of the allegedly wrongful practice of the hearing officer. Judge Blumenfeld explained:

"A prospective denial of benefits would prevent Phelps from ever obtaining reimbursement for the expenses he incurs in undergoing oxygen therapy. On a motion to dismiss, his allegation of prospective denial should be taken as true, particularly since the hearing officer's conclusion is so broadly worded that prospective effect appears likely to be accorded the decision."

*Ruling on Motion to Dismiss,* p. 17 (December 28, 1979) (footnote omitted).

Judge Blumenfeld thus held that the plaintiff had standing on the basis of the threatened future harm, although he made it clear that the defendant might subsequently establish that the prospect of such injury was illusory:

"It remains open to the Secretary to demonstrate either on summary judgment or at trial that the decision does not effect a prospective denial of benefits, or that it will not form the basis for future denials, for which Phelps will be entitled to hearings *de novo.*"

*Id.* at 17 n. 10.

The request for reconsideration of Judge Blumenfeld's ruling is predicated on a provision of the *Medicare Carrier's Manual,* a guide which is apparently followed as a matter of policy by the insurance carriers

*parte* contacts at subsequent proceedings in this case, if circumstances change so as to make that claim viable.

**2.** Transcript of Oral Argument, pp. 22–24.

**3.** The first motion to intervene was filed by Michael M. Kaufman; the second by Florence Carlson (by her son, Vern Carlson), Joel Neleber (as representative of the Estate of Harry Neleber), Winifred Eubanks, Viola Post, Francesca Wegner (by her husband, Leopold Wegner) and Mary Onofrio (by her daughter, Helen

Raiola). All of the applicants for intervention are represented by the same counsel as plaintiff Phelps.

**4.** Judge Blumenfeld's unpublished ruling thoroughly treats the factual allegations of Phelps' complaint and the relevant background concerning Part B of the Medicare program. *See Ruling on Motion to Dismiss,* pp. 1–4 (December 28, 1979). There is no need to recapitulate those matters here.

administering Part B of the Medicare program, but which, the defendant concedes, does not have the force of HEW regulations.[5] Section 12021 of that book provides that a decision of a hearing officer, while "binding upon all parties to the hearing unless it is reopened or revised," is "not a precedent opinion [sic] and does not affect subsequent hearing decisions or alter the carrier's payment determination on future claims." The defendant argues that the plaintiff therefore cannot suffer any further harm as a result of the allegedly wrongful conduct of the hearing officer in his case, so that there is no longer before this court any "case" or "controversy," as required by Article III of the United States Constitution.

The plaintiff's response to this argument is that, as a practical matter, notwithstanding the *Manual*, a hearing officer is likely to follow his or her own decisions in similar cases and may also look to the decisions of other hearing officers in analogous situations for guidance in a particular case. Accordingly, the plaintiff contends, it cannot be said that an improperly rendered decision of a hearing officer does not cause prospective injury to a claimant, even if the decision technically lacks the force of binding precedent.

The defendant may ultimately establish that Phelps cannot suffer any harm in the future. However, the court is unable to determine, on the defendant's renewed motion to dismiss, the essentially factual question of the practical effect of section 12021 of the *Medicare Carrier's Manual*. The defendant has not conclusively established that the plaintiff will not suffer denials of subsequent disability claims as a result of the practice challenged here. Since it is not "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *United States v. Concentrated Phosphate Export Association*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968), the defendant has not established that the

plaintiff's claim no longer presents a justiciable "case" or "controversy."

■ Moreover, because this action is brought as a class action, the constitutional requirement of a "case" or "controversy" may be met even after the expiration of Phelps' claim, so long as he retains sufficient personal stake in the class certification issue and the claims of other members of the putative class are still alive. *See United States Parole Commission v. Geraghty*, —— U.S. ——, ——, 100 S.Ct. 1202, 1211–12, 63 L.Ed.2d 479 (1980); *White v. Mathews*, 559 F.2d 852, 856–57 (2d Cir. 1977), *cert. denied*, 435 U.S. 908, 98 S.Ct. 1458, 55 L.Ed.2d 500 (1978). Phelps has vigorously litigated the class certification issue. The defendant has failed to establish that no members of the class have live claims which this court may adjudicate. This case would therefore, in light of *Geraghty*, remain justiciable under Article III even if the defendant had demonstrated that Phelps' claim has been extinguished. Accordingly, upon reconsideration of the defendant's motion to dismiss, that motion is denied.

### 2. Motions to Intervene and to Dismiss the Complaints of the Prospective Intervenors

■ The two pending motions to intervene—one filed by Michael M. Kaufman, the other by a group headed by Florence Carlson—are governed by Rule 24(b), Fed. R.Civ.P., which permits "anyone" to intervene in an action "when [his or her] claim or defense and the main action have a question of law or fact in common." Here, the proposed complaints of the applicants for intervention allege that all of them have been denied benefits by Part B hearing officers who disregarded the evidence adduced at the hearings and instead rendered decisions solely on the basis of policies embodied in HCFA manuals. *See* Proposed Complaint of Intervenor Kaufman ¶¶ 23–24; Proposed Complaint of Intervenors Carlson *et al.* ¶¶ 25–26.

---

**5.** Transcript of Oral Argument, p. 7.

The legal question raised by these allegations is identical to the principal issue presented by Phelps' claim. *See* Complaint ¶¶ 3, 23–24. While the court has, as the defendant suggests, ample discretion to deny permission to intervene under Rule 24(b), there is no reason, such as the possibility of undue delay or prejudice to the original parties,[6] to deny the timely motions for intervention filed in this action.

The defendant has moved to dismiss the complaints of the applicants for intervention, alleging that even if those complaints present common questions of fact or law, they have improperly been presented to the court solely to breathe life into a lawsuit which otherwise would have expired for lack of a justiciable "case" or "controversy."[7] In view of the court's holding that plaintiff Phelps' claim is cognizable under Article III of the United States Constitution, there is no need to dwell on this point, and no reason either to deny permission to intervene or to dismiss the complaints of the intervenors. The motions to intervene are granted, and the motions to dismiss the intervenors' complaints are denied.

### 3. Motion for Class Certification

The plaintiff seeks certification of a class consisting of "all persons residing in the United States who are Medicare-eligible or who have been denied benefits pursuant to a Medicare Part B hearing decision since 1966," when the Medicare program was instituted. The plaintiffs contend that this class action is within the scope of Rule 23(b)(2), Fed.R.Civ.P., because:

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

The defendant opposes the motion for class certification on the grounds that Rule 23(b)(2) is inapplicable; the class has not been demonstrated to be "so numerous that joinder of all members is impracticable," as required by Rule 23(a)(1); and Phelps' claim neither presents "questions of law or fact common to the class," Rule 23(a)(2), nor typifies the claims of the class, as required by Rule 23(a)(3). In addition, the defendant argues that if a class is certified, it should be limited to Connecticut residents who fall within its definition. For the reasons stated below, I find that the defendants' objections to class certification are not well-founded, although there is merit to the defendant's suggestion that the class certified should be a statewide class, rather than a nationwide one.

#### (a) Rule 23(b)(2)

If the plaintiff prevails on the merits of the action, he will have established that all persons denied Part B benefits after hearings are subject to a policy (for which the defendant is ultimately responsible) which violated their due process rights,[8] and that declaratory and injunctive relief against the challenged practices is

---

**6.** *See United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir. 1978); 7A C. Wright & A. Miller, *Federal Practice & Procedure* § 1913 (1972).

**7.** An additional argument advanced by the defendant in support of the motion to dismiss the intervenors' complaints is that their claims, like Phelps' claim, has been made moot by the provision of the *Medicare Carrier's Manual* disclaiming any precedential effect of Part B hearing officers' decisions. That argument must be rejected for the reasons stated with regard to the justiciability of original plaintiff's claim in Point 1 of this ruling.

**8.** The defendant's argument that it is in fact her policy to require hearing officers to decide individual cases on the basis of the evidence adduced at each hearing, *see* 42 C.F.R. § 405.834, may, if ultimately proved at trial, defeat the plaintiff's claim on the merits. However, it is no bar to class certification, since the plaintiff has alleged in good faith, and the defendant has yet to disprove, that the Secretary is responsible for the acts of hearing officers who disregarded such a policy (if one existed) and conducted hearings and made decisions in violation of the constitutional rights of the plaintiff class. It would be improper for the court to assess the merits of the plaintiff's claim on a motion for class certification. *See Eisen v.*

appropriate.[9] Therefore, Rule 23(b)(2) applies insofar as the class which the plaintiff seeks to represent includes persons whose Part B claims were denied after administrative hearings. However, to the extent that the plaintiff desires to represent "all persons . . . who are Medicare-eligible," the class is too broad, for the defendant's alleged practices do not affect all persons eligible for Medicare benefits, but only those whose claims are denied by Part B hearing officers.

### (b) "Numerosity"

■ Even as limited above, the class certainly consists of so many individuals that joinder is not a practicable procedural device. Although the plaintiff has not established the precise number of persons—either in Connecticut or the nation as a whole—who have been denied benefits pursuant to the decisions rendered by Part B hearing officers, data supplied by HCFA indicate that in the six month period October 1, 1977–March 31, 1978, 3,811 Part B decisions were rendered after administrative hearings, including 48 in Connecticut. It is reasonable to presume from this fact that since 1966, between one and two thousand (or more) Connecticut residents have been denied Part B benefits after hearings.[10] Moreover, apart from their sheer numbers, the members of the plaintiff class are likely to be so dispersed and difficult to locate that the joinder of all of them would be impracticable. Considering all the relevant circumstances, the court concludes that the requirement of Rule 23(a)(1), Fed. R.Civ.P., has been satisfied here.

### (c) "Commonality" and "Typicality"

If, as plaintiff Phelps claims, the practice which he challenges here—the rendering of Part B decisions on the basis of the application of published Medicare policy without regard to the facts of individual cases—is a practice of general applicability, then it necessarily affects the entire plaintiff class as defined above. Moreover, if the plaintiff prevails on the merits, he will establish that the practice is unconstitutional as applied to all similarly situated persons. Therefore, although the individual administrative claims of the members of the plaintiff class arise in a variety of factual contexts, see *Leduc v. Harris*, 488 F.Supp. 588 (D.Mass. 1980), the basic legal question raised by Phelps' challenge to the procedures and decision-making processes of Part B hearing officers is identical to those of the claims of other class members, and his claim typifies theirs. Accordingly, the "commonality" and "typicality" requirements of Rule 23(a)(2) and 23(a)(3) are met.

In sum, the plaintiff has established to the court's satisfaction that the requirements of Rule 23(a) have been met[11] and that class treatment is appropriate under Rule 23(b)(2).

### (d) Geographic Scope of the Class

■ Although the Supreme Court recently held in *Califano v. Yamasaki*, 442 U.S. 682, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979), that certification of a nationwide class in an analogous context was permissible, Justice Blackmun cautioned that

[i]t often will be preferable to allow several courts to pass on a given class claim in order to gain the benefit of adjudication by different courts in different factual contexts. For this reason, a federal court when asked to certify a nationwide class should take care to insure that nationwide relief is indeed appropriate in the case before it, and that certification of such a class would not improperly in-

---

Carlisle & Jacquelin, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974).

**9.** Neither Phelps nor the intervening plaintiffs seek monetary damages.

**10.** *See Doe v. Charleston Area Medical Center, Inc.*, 529 F.2d 638, 645 (4th Cir. 1975); *Swiggett v. Watson*, 441 F.Supp. 254, 256 (D.Del.

1977); *Gatling v. Butler*, 52 F.R.D. 389, 392–93 (D.Conn.1971) (Blumenfeld, J.).

**11.** The defendant has not challenged the adequacy of the representation of the class, *see* Rule 23(a)(4), Fed.R.Civ.P., by the named plaintiff and his counsel, who also represent the intervening plaintiffs.

terfere with the litigation of similar issues in other judicial districts.

*Id.* at 702, 99 S.Ct. at 2558.

The court declines to certify a nationwide class in this case. Neither plaintiff Phelps nor the intervening plaintiffs have alleged that any instance of the type of wrongful conduct which is the subject matter of their claims has occurred outside the state of Connecticut. Moreover, it appears that different insurance carriers are responsible for the administration of the Part B program, including the hearing process, in different states. The parties have not called to the court's attention any pending actions in other judicial districts which raise the issues presented here. However, if the conduct of Part B hearing officers in other states ultimately gives rise to similar claims, it is best that those claims be adjudicated separately, outside this district. The court exercises its discretion, *see Califano v. Yamasaki, supra,* 442 U.S. at 702–03, 99 S.Ct. at 2558–59, to certify a statewide class, rather than a nationwide one.

*(e) Notice*

▮ Because this class action is authorized by Rule 23(b)(2) rather than Rule 23(b)(3), the stringent notice requirements of Rule 23(c)(2), including individual notice to all members of the class, are inapplicable. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 n. 14 (1974). However, Rule 23(d)(2) empowers the court to direct that notice be given "to some or all of the members of any step in the action," and the court finds that due process requires some form of notice to the class members here. *See Eisen v. Carlisle & Jacquelin,* 391 F.2d 555, 564–65 (2d Cir. 1968); *Women's Committee for Equal Employment Opportunity v. National Broadcasting Co.,* 71 F.R.D. 666, 671 (S.D.N.Y. 1976); *Lynch v. Sperry Rand Corp.,* 62 F.R.D. 78, 85 n. 8 (S.D.N.Y.1973). Specifically, all individuals who become class members in the future by virtue of rejections of their claims for benefits by Part B hearing officers in Connecticut should receive notice of the pendency of the action, a description of it, and the fact that they are members of the class. Such notice should be sent together with notification of the adverse administrative decisions. While the plaintiffs should bear the burden of preparing and submitting to the court for its approval a form of such notice (including the cost of preparation), the defendant should be able to direct or assume responsibility for the mailing of such notice to new class members. Notice of some sort should also be given to existing members of the class, but such notice need not be sent to each member of the class individually.

The court orders that a hearing be held on May 20, 1980, at 10:00 A.M., for the purpose of determining the exact form and content of the notice to be given class members; the method of notifying as many existing members of the class as is practicable without undue expense; and the mechanics of mailing notice to new class members. Counsel for the plaintiffs are hereby ordered to submit to the court a memorandum outlining their position on these questions of notice no later than May 12, 1980; counsel for the defendants shall submit an answering memorandum no later than May 15, 1980.

### Conclusion

For the reasons stated herein, the court:

1. On reconsideration of the defendant's motion to dismiss the action, denies that motion;

2. Grants the motions to intervene pursuant to Rule 24(b), Fed.R.Civ.P., and denies the motions to dismiss the intervenors' complaints;

3. Grants the motion to certify this case as a class action, to the extent that the class certified consists of all Connecticut residents who have been denied Medicare benefits pursuant to decisions rendered by Part B hearing officers in this state since 1966; and

4. Orders further proceedings as described herein to determine matters relating to notice to the class members.

It is so ordered.