Michelle CATANZANO, by her parent and next friend, Sam CATANZANO, on behalf of herself and all persons similarly situated, Plaintiff–Appellee,

v.

Michael DOWLING, as Commissioner of the New York State Department of Health, Defendant–Appellant,

Richard Schauseil, as Acting Director of the Monroe County Department of Social Services; and Andrew Doniger, M.D., as Director of the Monroe County Department of Health, Defendants–Third–Party–Plaintiffs,

Michael Dowling, as Commissioner of the New York State Department of Social Services; and Mark Chassin, as Commissioner of the New York State Department of Health, Third–Party–Defendants.

No. 1190, Docket 94–7873.

United States Court of Appeals, Second Circuit.

Argued Dec. 19, 1994.

Decided July 13, 1995.

Patrick Barnett–Mulligan, Asst. Atty. Gen., Albany, NY (G. Oliver Koppell, Atty. Gen. of the State of NY, Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., of counsel) for defendant-appellant.

Bryan D. Hetherington, Rochester, NY (LeAnna Hart Gipson, Kenneth S. Shiotani, Elizabeth L. Schneider, Ellen Yacknin, Monroe County Legal Assistance Corp., of counsel) for plaintiff-appellee.

Before: MINER, ALTIMARI, and CALABRESI, Circuit Judges.

MINER, Circuit Judge:

Defendant-appellant Michael Dowling, in his capacity as Commissioner of the New York State Department of Health, appeals from an order entered on July 28, 1994 in the United States District Court for the Western District of New York (Larimer, J.) denying a motion to amend a preliminary injunction previously granted in favor of plaintiffs-appellees Michelle Catanzano and other applicants for home health care services under the Medicaid program, 42 U.S.C. §§ 1396 *et seq.* In its decision and order, the district court determined that decisions made by certified home health agencies to deny or reduce the amount of home health care prescribed for Medicaid recipients are "state actions" that trigger the recipients' federal fair hearing rights. For the following reasons, we affirm the order of the district court.

## BACKGROUND

This appeal arises out of a challenge to the system by which New York State ("the State") provides home health care benefits under the Medicaid program. The Medicaid program, through which the federal and state governments provide health care and services to needy individuals, is subsidized by the federal government and is administered by the states. *See Caldwell v. Blum,* 621 F.2d 491, 494 (2d Cir.1980), *cert. denied,* 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981). A state participating in Medicaid must offer home health care services as part of the program. *See* 42 U.S.C. § 1396d(a)(7). These services can include assistance in dressing, bathing and preparation of meals, as well as the provision of medication and other services. Home health care is prescribed, as are other forms of medical treatment, by the patient's treating physician, and

the prescription can range from brief daily visits to around-the-clock monitoring by an aide or nurse.

In New York, home health care services under Medicaid must be provided by certified home health agencies ("CHHAs"). *See* N.Y.Pub.Health Law §§ 3602(3), 3614(1). CHHAs are home care providers that are licensed and regulated by the State, and, pursuant to federal regulations, CHHAs must comply with state as well as federal law. *See* 42 C.F.R. § 484.12(a). Although a patient's treating physician prescribes the form or amount of required home health services, CHHAs employ their own professional medical staff of nurses who, pursuant to state law, make their own determinations as to the medical necessity and appropriateness of home health services.

In the summer of 1989, the named plaintiff, Michelle Catanzano, who was disabled at the time and receiving prescribed twenty-four-hour-a-day home health care, was hospitalized. Upon her discharge from the hospital, the CHHA responsible for her care unilaterally decided to reduce her home health care services from twenty-four-hour-a-day to twelve-hour-a-day care. At that time, state law required that if a determination of a CHHA conflicted with that of a patient's treating physician, the local Department of Social Services ("local DSS") referred the matter to an independent physician (or "local professional director"), who made the final determination as to the necessary amount of care. In the case of a referral to a local professional director, the patient was entitled to receive notice that a determination was to be made, a hearing on the matter, and aid-continuing rights as required by federal and state law ("fair hearing rights"). These rights, which have their roots in *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), are mandated by federal regulation whenever the state agency responsible for the administration of Medicaid decides to reduce, deny, or suspend benefits. *See* 42 C.F.R. §§ 431.200, 431.205.

Although Ms. Catanzano's treating physician disagreed with the CHHA's determination, the determination was implemented without being referred to a local professional director, and Ms. Catanzano was not accorded her fair hearing rights. As a result, she filed this action in 1989 to enjoin the Monroe County DSS, the agency with responsibility for Ms. Catanzano's Medicaid services, from making any reductions in home health care without according her a fair hearing. The district court granted the injunction in part, finding that, under state law, every dispute between a CHHA and a treating physician was to be resolved by a local professional director, and that state law required the provision of fair hearing rights in all such cases. The district court also held that the denial of services without fair hearing rights deprived Ms. Catanzano of her federal constitutional right to due process. The district court's order was affirmed by this court in March of 1990.

In 1991 and 1992, the State amended its laws governing home health care and created a four-step system that a CHHA must use to determine whether and how much home health care should be provided to Medicaid applicants and recipients. The new law, known generally as the "fiscal assessment amendments," was implemented through a statute, § 367–j of the Social Services Law, a regulation, 18 N.Y.C.R.R. § 505.23, and an administrative directive, 92–ADM–50. Under the new scheme, a CHHA may not provide home health services unless such services are prescribed by the applicant's physician and a "fiscal assessment" is made by the CHHA staff. While some form of assessment by the CHHA is to be performed in every case where home health care is prescribed, the assessments differ, depending upon the length of the prescribed period of home care.

If the prescribed period of care is expected to last for no more than 60 days, the CHHA's determination consists of only two steps. First, the CHHA determines whether and how much home health care is medically necessary and whether that care, if any, can be provided safely in the home. *See* N.Y.Soc.Serv.Law § 367–j(2)(a)(i) (the "Medical Necessity and Safety" step). Second, the CHHA determines whether there are ways to deliver the care that are less expensive than home care, taking into account

various alternatives identified in the statute. *See id.* § 367–j(2)(a)(ii)–(vii) (the "Economies" step). If the CHHA determines, as a result of its inquiries under steps one or two, that the patient should receive no home health care, that decision is final and is implemented without administrative review or a hearing.

Where it is expected that prescribed home care will exceed 60 days, the amendments require the CHHA to make two additional determinations. In these cases, a third step requires the CHHA to determine whether the cost of home health care will exceed 90 percent of the cost of institutionalization. *See id.* § 367–j(1)(a) (the "Excess Cost Step"). If so, the patient will be referred to an institutional health care provider unless the CHHA determines—in step four—that the patient meets one of the exceptions to mandatory institutionalization. *See id.* at § 367–j(1)(e) (the "Exceptions" step). If the local DSS disagrees with a determination made by a CHHA pursuant to steps three or four, the matter is referred to a local professional director, who makes a final determination. This four-step process applies to all applicants for home health care services, as well as to individuals already receiving Medicaid, whose entitlement to benefits is reassessed periodically. Significantly, under the present scheme, fair hearing rights are accorded only where the DSS disagrees with the determination made by a CHHA, the matter is referred to a local professional director, and the local professional director decides to deny or reduce the amount of care prescribed by the treating physician.

In April of 1993, after the amendments were enacted, the district court granted a motion made by plaintiff to amend her complaint to bring a class action. The class consisted of "recipients of and applicants for home health care in New York State who have been or will in the future be deprived of their federal constitutional rights through the operation of the 1991 and 1992 Amendments to the laws and regulations governing Medicaid-funded home health care in New York State." The plaintiffs later moved for a statewide temporary restraining order and preliminary injunction to enjoin the State

from enforcing section 367–j until fair hearing rights were provided to all Medicaid applicants or recipients whose care was adversely affected under the new laws. The district court granted the preliminary injunction on February 16, 1994. The court enjoined all home health care suspensions, reductions, or discontinuances "as a result of conducting a fiscal assessment or otherwise, without *first* providing for notice, the right to a fair hearing and aid-continuing as mandated by [federal regulations]."

As a result of disagreements between the parties, the court issued three subsequent orders. First, the court determined which class members were covered by the order, to ensure that

> [a]ll New York State recipients and applicants of Medicaid-funded home health care who receive less home health care than most recently ordered by their treating physician or who have had their home health care suspended, denied, terminated or reduced without prior notice, right to a fair hearing and aid-continuing as mandated by [federal regulations]

would benefit from the injunction. *Catanzano by Catanzano v. Dowling,* 847 F.Supp. 1070, 1079 (W.D.N.Y.1994). Second, the court determined that the injunction covered *all* adverse home health care determinations resulting from the application of the fiscal assessment amendments.

Finally, in an order issued on July 28, 1994, the court revisited the injunction in response to a motion by plaintiffs for summary judgment and for amendment or clarification of the district court's earlier orders. In response to the State's contention that the injunction applied only to plaintiffs who were adversely affected by determinations made under section 367–j(1) (steps three and four), rather than all of the provisions of section 367–j, the court stated:

> No distinction was made in any of my decisions or in the decretal paragraphs granting injunctive relief that the preliminary injunction related to part of § 367–j and not all of it. The statute in its entirety was referenced as were the controlling regulations ... and the administrative directive.... There was no explicit or im-

plicit qualification concerning the scope of the relief granted.

To the extent defendants interpret the Court's decisions more narrowly, they do so erroneously and contrary to both the letter and spirit of the decision and preliminary injunction.

In its decision and order, the district court explicitly determined that the actions taken by CHHAs to deny, suspend, or reduce care ordered by private physicians were state actions that triggered plaintiffs' federally mandated fair hearing rights.

The State appeals from this order. However, the State does not challenge the injunction to the extent that it requires fair hearing rights when decisions are made based on steps three and four. Rather, it appeals the district court's order only insofar as it requires that patients receive fair hearings with respect to decisions made by CHHAs based on steps one and two.[1]

**DISCUSSION**

*1. General*

■ Where, as here, a plaintiff seeks to stay governmental action taken in the public interest pursuant to a statutory scheme, a district court may grant a preliminary injunction only where the plaintiff can show irreparable injury and a likelihood of success on the merits. *See Sweeney v. Bane*, 996 F.2d 1384, 1388 (2d Cir.1993). We review the district court's issuance of the preliminary injunction for an abuse of discretion, *Acquaire v. Canada Dry Bottling Co.*, 24 F.3d 401, 409 (2d Cir.1994), which "typically consists of either applying incorrect legal standards or relying on clearly erroneous findings of fact." *Resolution Trust Corp. v. Elman*, 949 F.2d 624, 626 (2d Cir.1991). Here, the central issue is whether the district court correctly concluded that the CHHAs' actions should be deemed state action.

*2. Requirement of Fair Hearings*

The parties do not dispute that Medicaid applicants and recipients are entitled to fair hearing rights when a decision is made by a state agency that adversely affects their right to receive benefits. The Medicaid statute, 42 U.S.C. § 1396a(a)(3), requires that the state plan must "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or not acted upon with reasonable promptness." In addition, federal regulations require that, whenever the state agency takes action to terminate, suspend, or reduce Medicaid eligibility or covered services, an applicant or recipient receive a fair hearing that meets the due process standards enunciated in *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). *See* 42 C.F.R. §§ 431.200, 431.205(d).

■ It is fundamental, however, that "the action inhibited by the [due process clause] of the Fourteenth Amendment is only such action as may fairly be said to be that of the States." *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Therefore, the due process fair hearing rights required by the statute and regulations are triggered only when the adverse actions are implemented through state action. We therefore turn to whether the CHHAs' decisions to deny or terminate Medicaid benefits should be deemed "state actions" that trigger plaintiffs' fair hearing rights.

*3. State Action*

■ As noted above, in the first two steps of its assessment, the CHHA determines whether the prescribed services "can maintain the recipient's health and safety in the home," and whether the recipient's needs can be met by employing certain alternative services. Determinations by CHHAs in these instances are not forwarded to a local DSS

---

1. At some points in its brief, the State appears to challenge the requirement of fair hearing rights only when the prescribed period of care is expected to last for fewer than 60 days. *See, e.g.,* Appellant's Brief p. 15 (Argument Heading); p. 25 (Conclusion). However, if the State believes

that step one and two assessments are made only where care is expected to last for fewer than 60 days, it is incorrect. Steps one and two are performed in every case, regardless of the expected length of care. *See* N.Y.Soc.Serv.Law § 367–j(2).

for ratification or approval. The district court held that CHHA action in these circumstances was the equivalent of state action, stating:

> [T]he State and County defendants exercise significant control over the CHHAs. They pay for covered services, regulate their activities, issue directives which cannot be ignored and created the legal framework which governs their activities.
>
> It is only in the framework of N.Y.Soc. Serv.Law § 367–j and the state regulations that CHHAs make determinations concerning home health care for a Medicaid applicant or recipient.

The district court concluded that it is "patently unreasonable to presume that Congress would permit a state to disclaim federal responsibilities by contracting away its obligations to a private entity." Dist.Ct.Order Dated 7/28/94 (quoting *J.K. v. Dillenberg*, 836 F.Supp. 694, 699 (D.Ariz.1993)). In the face of this persuasive reasoning, the State argues that CHHAs are private entities that make only independent professional judgments regarding the care that each patient requires, and therefore that no fair hearing rights are triggered by their determinations. We disagree with the State, and conclude that, with respect to determinations made under steps one and two, CHHA action is state action that triggers plaintiffs' due process rights.

In *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982), the Supreme Court was presented with the question whether decisions made by physicians and other agents of nursing homes to transfer or discharge Medicaid recipients amounted to "state actions" that triggered due process protections. There, federal regulations required nursing homes that participated in Medicaid to establish in-house utilization review committees ("URCs"), whose functions included periodically assessing whether patients were receiving the appropriate level of care, and whether patients' continued stays at the institution were justified. *Id.* at 994–95, 102 S.Ct. at 2780–81. In some cases, however, decisions as to the length of required stay were made by administrators of the nursing homes or by the patients' attending physicians, and these decisions were distinct from those made by the URCs. *Id.* at 1007 n. 17, 102 S.Ct. at 2787 n. 17. At issue in *Blum* was whether the latter decisions, those made by the nursing home administrators or patients' attending physicians, were state actions.

In its analysis, the Court stated that "a State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Id.* at 1004, 102 S.Ct. at 2786; *see also San Francisco Arts & Athletics, Inc. v. United States Olympic Committee*, 483 U.S. 522, 546, 107 S.Ct. 2971, 2986, 97 L.Ed.2d 427 (1987) (describing the foregoing as the "fundamental" consideration for state action purposes). In holding that the decisions by the administrators and private physicians were not state actions, the Court noted that "the State is [not] responsible for the decision to discharge or transfer particular patients. Those decisions ultimately turn on medical judgments made by private parties according to professional standards that are not established by the State." *Blum*, 457 U.S. at 1008, 102 S.Ct. at 2788; *see also id.* at 1008–09, 102 S.Ct. at 2788 (noting that public defenders had been held not to be state actors, in part because the decisions made by them "were framed in accordance with professional canons of ethics, rather than dictated by any rule of conduct imposed by the State"). Moreover, the Court noted, "[t]here is no suggestion that [the decisions at issue] were influenced in any degree by the State's obligation to adjust benefits in conformity with changes in the cost of medically necessary care." *Id.* at 1005, 102 S.Ct. at 2786. The Court explicitly noted, however, that determinations made by URCs were "not part of th[e] case." *Id.* at 1007 n. 17, 102 S.Ct. at 2787 n. 17.

This court later discussed the issue left open in *Blum* (albeit in the Medicare, rather than Medicaid, context): whether the decisions made by URCs should be deemed state actions. *See Kraemer v. Heckler*, 737 F.2d 214 (2d Cir.1984). While the record before us in that case did not permit us to resolve the issue, we concluded that "the govern-

ment's use of URC determinations may well provide the state action that was missing in *Blum.*" *Id.* at 220. We noted that the URC's decision did not resemble an independent professional judgment, because the record indicated that the judgment was "governed largely by statute, regulation, [federal government] manuals, and transmittal letters." *Id.* at 220. We also noted that the *Blum* Court had relied on the fact that, when coverage was terminated in that case, Medicaid had simply responded to an independent decision made by a private entity. In *Kraemer,* by contrast, the decisions by the URCs "effectively" terminated Medicare coverage. *Id.* at 219–20; *see also Feld v. Berger,* 424 F.Supp. 1356, 1360–63 (S.D.N.Y. 1976) (Weinfeld, J.) (assuming that determinations made by URCs are state action).

In light of the foregoing, we must reject the State's argument that the CHHA's determinations should not be deemed state action. First, while we recognize that regulation alone does not make a state actor, *Jackson v. Metropolitan Edison Co.,* 419 U.S. 345, 350, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1974), CHHAs are not simply regulated by the State; rather, they are deeply integrated into the regulatory scheme set up by section 367–j, the implementing regulations, and the administrative directive. *See* 92–ADM–50, at 6 (describing the "close collaborative relationship" between CHHAs and the DSS). CHHAs, for example, are the only entities permitted to provide home health care under Medicaid, and are required to evaluate all potential recipients. Significantly, unlike in *Blum,* the decisions made by the CHHA are not purely medical judgments made according to professional standards. Instead, section 367–j(2)(a)(i) requires the CHHAs to determine whether the health and safety of the recipient can be maintained "as defined by the department of health in regulation." Furthermore, the statute provides the specific alternatives that the CHHA is to consider in making the "efficiency" determinations mandated in step two. *See id.* § 367–j(2)(a)(ii)–(vii); *see also* 92–ADM–50, at 8. *Cf. Rendell–Baker v. Kohn,* 457 U.S. 830, 841, 102 S.Ct. 2764, 2771, 73 L.Ed.2d 418 (1982) (no state action where decisions "were

not compelled or even influenced by any state regulation").

Moreover, the *Blum* court noted that it "would have a different question" as to state action if the State "affirmatively command[ed]" the summary discharge or transfer of Medicaid patients whose care was thought to be inappropriate. *Blum,* 457 U.S. at 1005, 102 S.Ct. at 2786. Under the scheme at issue here, the CHHA is required to deny the prescribed treatment *if* the CHHA concludes that the prescribed home health care is inappropriate under step one or step two. The regulations do not provide for review or ratification of these determinations made by CHHAs. Therefore, as in *Kraemer,* decisions of the CHHAs "effectively" deny or reduce care. In this way, the state has delegated its power to deny services to the CHHAs, who are then *"responsible* for the specific conduct of which the plaintiff complains." *Blum,* 457 U.S. at 1004, 102 S.Ct. at 2785 (emphasis in original). And, inasmuch as the amendments were passed with the express goal of containing Medicaid costs, *see* 1991 N.Y.Laws, Ch. 165, § 20, the CHHAs' decisions are "influenced ... by the State's obligation to adjust benefits in conformity with changes in the cost of medically necessary care," and to that extent are unlike the independent decisions at issue in *Blum.* 457 U.S. at 1005, 102 S.Ct. at 2786; *see also* 92–ADM–50, at 6 ("Th[e present] policy allows [CHHAs] the opportunity to make judgments regarding not only the most appropriate type of long term care needed, but also the most cost effective.").

An additional consideration suggests that the CHHAs' actions should be deemed state actions: the State has delegated its responsibility for "prior approval" to CHHAs. Prior approval, which is defined by state regulation as "a determination *by the Department of Health,"* 18 N.Y.C.R.R. § 513.1(a) (emphasis supplied), is the general term for the process by which it is determined whether requested services are medically necessary and whether their cost will be reimbursed. *See id.* For benefits other than home health care, patients adversely affected by prior approval determinations are entitled to a fair hearing. *Id.* at § 513.8. The state may not circum-

vent this requirement by delegating prior approval to CHHAs. Accordingly, the CHHAs are not "independent actors doing business with the state," but are entities that have assumed the "responsibility for [the State's] mandated health care duties." *See Dillenberg*, 836 F.Supp. at 697–98.

In sum, we conclude that the State "has exercised coercive power [and] has provided such significant encouragement ... that the [CHHAs' determinations in steps one and two] must in law be deemed th[ose] of the State," *Blum*, 457 U.S. at 1004, 102 S.Ct. at 2785, and that the determinations thus trigger fair hearing rights.

### CONCLUSION

For the foregoing reasons, the district court's order is AFFIRMED.