Marsha Marie PERRY, et al., Plaintiffs,

v.

Mabel CHEN, M.D., Director of the Arizona Health Care Cost Containment System, Defendant.

No. CIV. 95–140 TUC RMB.

United States District Court,
D. Arizona.

Aug. 12, 1996.

Sally Hart, Tuscon, AZ, for Plaintiffs.

Logan Johnson, III, Phoenix, AZ, for Defendant.

## AMENDED ORDER

BILBY, Senior District Judge.

The Court's February 9, 1996 order shall be amended as follows to reflect that the decision does not pertain to decisions made by an AHCCCS beneficiary's physicians.

## I. INTRODUCTION

This case arises under the United States Constitution, the federal Medicaid statute, Title XIX of the Social Security Act, 42 U.S.C. § 1396 and the Arizona AHCCCS statute, A.R.S. § 36–2903.01. Plaintiffs Marsha Marie Perry, Andrew C. Warrington and Mary Ann Carlton bring this suit as a prospective class action against Mabel Chen in her capacity as Director of the Arizona Health Care Cost Containment System ("AHCCCS").

Plaintiffs are individuals with multiple medical problems who are eligible for health care benefits under AHCCCS. All are enrolled in AHCCCS health plans that recently decided to terminate previously prescribed health services. Marsha Perry's health plan refused to authorize coverage for dentures after her doctor ordered her teeth extracted; Andrew Warrington's health plan terminated authorization for his weekly speech therapies; and Mary Ann Carlton was informed that her health plan terminated authorization for her disposable briefs. Plaintiffs never received written notice from AHCCCS or the health plans prior to the termination of these services.

Plaintiffs allege two claims: (1) that the failure of AHCCCS to give beneficiaries written notice violates federal and state law and (2) that the defendant's failure to give adequate notice effectively deprives beneficiaries of their right to obtain a fair hearing with respect to the denial of services.

Chen contends that under the Medicaid statutes and regulations, beneficiaries have no entitlement to prior notice, hearing and continued service when there is a change in the level of services. Chen asserts that written notice is only required for eligibility determinations or across-the-board terminations, reductions or suspensions of services.

Before the Court are cross-motions for summary judgment. After considering the pleadings, relevant law and oral argument the Court concludes that AHCCCS beneficiaries are entitled to receive written notice and a fair hearing in accordance with the Medicaid regulations prior to a reduction in the level of health care services.

## II. THE AHCCCS PROGRAM

Congress established the Medicaid program under Title XIX of the Social Securi-

ty Act, 42 U.S.C. § 1396 *et seq.* This Act authorizes a state's participation in a cooperative federal-state Medicaid program to provide medical assistance to low-income persons. To be eligible for federal financial assistance, states such as Arizona must administer their programs in accordance with federal guidelines. 42 U.S.C. § 1396a. Arizona adopted its plan through the waiver program known as AHCCCS, A.R.S. § 36–2901 *et seq.*

The AHCCCS program contracts with a number of health plans including Mercy Care and Arizona Physicians IPA ("AP/IPA") to provide eligible persons with covered health services. In return, the health plans receive a flat monthly payment from AHCCCS regardless of how many services are provided to each individual beneficiary. AHCCCS encourages, but does not require, its contracting health plans to provide their enrollees written notice when particular health services are terminated or denied. AHCCCS provides written notification to the relatively small number of AHCCCS members for whom it has direct fee-for-service responsibility. That notice explains the reasons for denial. In contrast, when eligible participants are accepted into a health plan, they are provided a handbook which sets forth rights, coverage and the grievance procedures.

## III. FACTUAL BACKGROUND

### A. *Marsha Marie Perry*

Perry is a 44 year old widow who resides in Tucson, Arizona. Her total monthly income is $212.69 which consists of $199 from the Veterans administration and a retirement check of $13.69. Because of her low income, Perry became eligible for the AHCCCS Medically Indigent program on October 3, 1994. The AHCCCS program has contracted with a number of health plans including Mercy Care to provide eligible persons with health services. AHCCCS assigned Perry to Mercy Care and she must obtain all of her health services from, or with the prior approval of, Mercy Care.

Perry's doctors found that her general health was being detrimentally affected by a chronic infection in her teeth and gums caused by a heredity condition. Dentists at Kino Hospital recommended that her teeth be extracted carefully over a period of time, that antibiotic therapy be given during this period and that she be fitted with dentures to allow her to eat after the extractions had been completed.

Perry's primary Mercy Care physician, Dr. Wanda Torrey, submitted the necessary request for prior authorization of these medical procedures to Mercy Care on or about December 2, 1994. Dr. Torrey verbally advised Perry that Mercy Care had refused to authorize the request for dentures. Perry received no written explanation of the reason for the denial or of her right to appeal the denial from either Dr. Torrey, Mercy Care or AHCCCS.

On January 25, 1995, Perry's attorney telephoned Dr. Torrey's office in an attempt to find out the reasons for Mercy Care's denial of authorization. Dr. Torrey's office informed counsel that a letter had been received from Mercy Care, but that Dr. Torrey would charge fees for discussing the appeal and for providing copies of Perry's medical records. Perry's attorney explained that Southern Arizona Legal Aid, Inc. was providing Perry with free legal services and that Perry did not have funds to pay Dr. Torrey. Southern Arizona Legal Aid sent a letter to Dr. Torrey's office by both facsimile and regular mail on January 25, 1995 requesting Torrey's opinion concerning the merits of Perry's request for coverage of the services in order that Perry could prepare an appeal. Dr. Torrey never responded. Perry's teeth are currently being extracted at Kino Hospital and at El Rio Community Health Center.

Apparently, Perry's request for dentures was denied because Mercy Care did not deem them medically necessary covered services. Mercy Care reevaluated the decision after receiving further information from Dr. Torrey. The dentures have now been approved. Defendant's Ex. G.

### B. *Andrew C. Warrington*

Warrington is a nine year-old boy who resides with his parents in Phoenix, Arizona. This action is brought on his behalf by his

father, Steven Warrington. Andrew was severely injured in an automobile accident on February 10, 1993. As a result, he developed a spastic quadripariesis with diminished neurological functioning. He is bedridden and unable to sit. His spasticity has limited his ability to interact with his environment and verbal communication is difficult.

Andrew is eligible for Arizona Long Term Care Services ("ALTCS") benefits under the AHCCCS program. AHCCCS has contracted with the Division of Developmental Disabilities ("DDD") to provide Andrew with health services. Since December, 1993, Andrew has been receiving speech, occupational and physical therapy at Phoenix Children's Hospital as authorized by his AHCCCS health plan, AP/IPA.

In December, 1994 Phoenix Children's Hospital called Mr. Warrington and advised him that they had been told by AP/IPA that only ten more therapy sessions were approved for Andrew. AP/IPA reversed that termination decision after Mr. Warrington called them and objected.

On February 27, 1995, Andrew's mother, Jenny Warrington, took him to Phoenix Children's Hospital for his usual therapy. At that time a hospital clerk showed Mrs. Warrington a facsimile from AP/IPA terminating coverage for Andrew's therapy services. The Warringtons never received written notice concerning the termination, or any explanation of the basis for it. In spite of not receiving a notice of their appeal rights, Mr. Warrington filed a grievance with DDD on February 28, 1995. On March 16, 1995, DDD reinstated Andrew's therapy services through August 31, 1995 providing that the AP/IPA medical director certifies every eight weeks that all criteria for coverage continues to be met.

The Warrington grievance included an objection to the lack of written notice of termination from the health plan. No relief or remedy on the notice issue was provided in the DDD decision.

## C. *Mary Ann Carlton*

Mary Ann Carlton is a 44 year-old woman who lives with her father, Gerald Carlton in Phoenix, Arizona. Mary Ann has Cerebral Palsy and mental retardation. She is incontinent of bowel and bladder, visually impaired, non-ambulatory and cannot communicate. She is completely dependent on her father and her AHCCCS caregiver for all of her needs. This action is brought on her behalf by her father.

As a result of her disabilities, Mary Ann is eligible for ALTCS benefits under the AHCCCS program. DDD is her ALTCS program contractor. DDD has contracted with AP/IPA to act as her AHCCCS health plan provider.

Dr. Reynaldo L. Vito, Mary Ann's primary care physician, prescribed disposable diapers as medically necessary due to her incontinence. Since approximately June, 1994, AP/IPA has been paying Walgreens Drug Store for disposable diapers for Mary Ann. In January 1995, the Walgreens staff informed Mr. Carlton that AP/IPA had not authorized the diapers for the month of January. Walgreens gave the diapers to Mr. Carlton at no charge and advised him that they would continue to try to get authorization for coverage from AP/IPA.

Walgreens continued to give the diapers to Mr. Carlton through March, 1995 while it attempted to obtain authorization from AP/IPA. In April, 1995, Walgreens informed Mr. Carlton that they had not received authorization and therefore, must discontinue providing the diapers at no charge. Neither Mr. Carlton or Mary Ann received notice from AP/IPA of the decision to terminate coverage for the diapers or the reason for the termination.

Mr. Carlton learned from his daughter's caregiver that he might have a right to challenge the decision and she gave him a telephone number of the Center for Disability Law who represents Mary Ann today. After consulting with the Center, Mr. Carlton filed a grievance with DDD on April 19, 1995. On May 30, 1995 DES approved the Carltons' grievance and ordered AP/IPA to provide disposable briefs. Mr. Carlton was reimbursed for the briefs he had to pay for himself.

## IV. DISCUSSION

Plaintiffs move for summary judgment seeking mandatory relief ordering Chen to provide AHCCCS beneficiaries with written notices of decisions denying them coverage of medical services that set out the specific factual and legal bases for the decision and describe the process for appealing the denial decisions. Additionally, Plaintiffs want this Court to require Chen to provide AHCCCS beneficiaries with fair hearings with respect to these decisions. Chen cross-moves arguing that due process and the relevant regulations do not create a specific right to notice and a hearing when a particular requested service is deemed no longer medically necessary. According to Chen, if written notice is required each time a discretionary decision is made, the system will collapse under the paperwork. Finally, Chen argues that the decisions made by service providers are those of a private entity and do not represent actions which can be attributed to the state.

### A. State Action

■ Chen concedes that federal regulations require that whenever AHCCCS takes action to terminate, suspend or reduce Medicaid eligibility, AHCCCS as a state agency must provide a fair hearing which meets the *Goldberg v. Kelly* standards. *See Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). These constitutional requirements as mandated by the due process clause of the fourteenth amendment, apply only to those actions fairly attributed to the state. *Shelley v. Kraemer*, 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948). Therefore, the due process notice and fair hearings requirements are only triggered when the adverse actions are implemented through "state action."

■ Chen argues that the acts of the AHCCCS health plans do not constitute state action. As a defendant, Chen raised this argument in a similar case which is presently before the Honorable John M. Roll. *See J.K. v. Dillenberg*, CIV 91–261–TUC–JMR. Chen attempted to consolidate this case with *Dillenberg* because she believes they raised identical issues. Judge Roll disagreed with her and denied Chen's motion to consolidate or transfer this case to his court. Similarly, in *Dillenberg*, Judge Roll ruled against Chen on her state action argument. This Court finds Judge Roll's state action analysis instructive and legally sound.

*Dillenberg* concerns challenges to the sufficiency of behavioral health service provided eligible children. One of the contract providers for mental health services issued a policy that *all* Title XIX children residing in residential treatment centers or therapeutic group homes would be discharged from treatment in ninety days. Plaintiffs were orally informed that their stay at the treatment center had been terminated despite a doctor's recommendation to the contrary. During cross-motions for summary judgment, Defendant Chen argued, as in this case, that while federal law requires notice of an action terminating, suspending or reducing Medicaid eligibility or covered services, this requirement applies only to the State and not to independent contractors hired to perform such services.

In support of her position, Chen relied on the seminal case of *Blum v. Yaretsky*, 457 U.S. 991, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982). In *Blum*, the Supreme Court found that due process principles do not apply to a nursing home's decision whether to discharge or transfer patients even though the home and patients received substantial government funding. In a published opinion, Judge Roll distinguished *Blum*, to find that the six regional behavioral health authorities' or REHBAs' decision to limit residential/treatment services to 90 days constituted state action. *J.K. v. Dillenberg*, 836 F.Supp. 694, 699 (D.Ariz.1993). Significant factors found by Judge Roll were: (1) the REBHAs were not private providers but private entities assigned the entire responsibility for a state-created service; (2) REBHAs are exclusively devoted to Medicaid support; (3) the REBHAs were executing state responsibilities; (4) Arizona has delegated the entire responsibility for its mandated health care duties to the REBHAs; and (5) the REBHAs are subject to extensive state involvement. *Id.*; *see also Catanzano v. Dowling*, 60 F.3d 113 (2nd Cir.1995) (decision made by home health care agency as to whether home health care

was "medically necessary" constitutes "state action").

As in *Dillenberg,* this Court finds evidence of state action which was not present in *Blum.* Here, the health plans are paid by AHCCCs for the covered services they provide, their activities are regulated by AHCCCS. AHCCCS issues directives which the plans must follow and creates through rules, contracts and policies the framework the plans must operate within. *See* A.R.S. § 36–2901 *et seq.;* A.R.S. § 36–2903.02, 36–2904, 36–2906, 36–2907, 36–2911 36–2917, 36–2920; R9–22–100 *et seq.;* R9–22–201 *et seq.;* R9–22–401 *et seq.;* R–22–501 *et seq.;* R9–22–601 *et seq.;* R9–22–701 *et seq.;* R9–22–901 *et seq.; see also* AHCCCS Medical Policy Manual. Additionally, only "qualified medical providers" as authorized by AHCCCS can make the "medical necessity" determinations. Def. Statement of Facts Exh. F. These decisions are made on the basis of medical judgment and cost effectiveness. *See* R9–22–201. Additionally, recipients can appeal service decisions to AHCCCS which has the ultimate power to order health plans to correct erroneous denial decisions. A.R.S. § 36–2903.01(B)(4) and A.C.C. R9–22–801 *et seq.* Consequently, these AHCCCS health plans have assumed the obligations of the State to provide Arizona's version of Medicaid benefits to the needy. Thus, the Court concludes that any action to deny or terminate covered services are state actions which trigger federally mandated notice and hearing due process procedures.

### B. *Written Notice Is Required*

■ Whether to provide written notice and hearing when the level of services is terminated poses a more difficult hurdle. Other than *Catanzano,* the numerous cases cited by the parties are either inapplicable or concern eligibility determinations issues. The Court notes that this case today concerns only the decisions issued by the utilization control or prior authorization processes of the health plan provider. It does not concern those decisions by the enrollee's primary physician who may deem a procedure no longer medically necessary.

■ Plaintiffs urge the application of *Goldberg v. Kelly* and *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) which are landmark cases on procedural due process. *Goldberg* held that procedural due process requires that a pretermination evidentiary hearing be held before welfare benefits can be discontinued. *Goldberg v. Kelly,* 397 U.S. at 267–68, 90 S.Ct. at 1020. Specifically, the recipient must have "timely and adequate notice detailing the reasons for a proposed termination, and an effective opportunity to defend by confronting any adverse witnesses and by presenting his own arguments and evidence orally." *Id.* In reaching a decision as to extent of due process courts must consider three factors: "(1) the private interest at stake for the individual; (2) the risk of an erroneous deprivation of that interest by the official procedures used as well as the probable value of additional or different procedural safeguards; and (3) the interest of the government including fiscal and administrative burdens in using the current procedures rather than additional or different procedures." *Mathews v. Eldridge,* 424 U.S. at 334–335, 96 S.Ct. at 903.

Chen asserts that *Goldberg* and *Mathews* are only applicable to eligibility cases and not those which concern denials of individual service requests. The Court disagrees. Where important interests are at stake, the *Goldberg* and *Mathews v. Eldridge* standards provide the necessary framework to prevent the occurrence of erroneous decisions.

The first point of reference, however, are the federal regulations, implementing the Medicaid Act. Subpart E of the Medicaid regulations prescribes the procedures required for a fair hearing for applicants and recipients. To support her position that notice is only required in eligibility decisions Chen cites the following language of 42 C.F.R. § 431.200:

This subpart implements section 1 902(a)(3) of the Act, which requires that a State plan provide an opportunity for a fair hearing to any person *whose claim for assistance* is denied or not acted upon promptly.

42 C.F.R. § 431.200 (emphasis in Defendant's Cross Motion). Chen neglects to cite the next sentence of the regulation which states:

> This subpart *also* prescribes procedures for an opportunity for *hearing if* the Medicaid agency takes *action* to suspend, terminate, *or reduce services.*

42 C.F.R. § 431.200 (emphasis added). "Action" is defined to mean a "termination, suspension *or reduction* of Medicaid eligibility or *covered services.*" 42 C.F.R. § 431.201 (emphasis added). "The agency may place appropriate limits on a service based on such criteria as medical necessity or on utilization control procedures." 42 C.F.R. § 440.230(d) State agencies are explicitly required to adopt a hearing system that satisfies the due process standards established by *Goldberg v. Kelly* and additional standards established by the regulations. 42 C.F.R. § 431.205(d).

Notice means "a written statement that meets the requirements of § 431.210." *Id.* Section 431.210 requires: (a) a statement of what action the State intends to take; (b) the reasons for the intended action; (c) the specific regulation or law that supports the change; (d) an explanation of the right to a hearing; (e) an explanation of the circumstances under which Medicaid is continued pending hearing. The State must *mail* a notice at least ten days before the date of the action. 42 C.F.R. § 431.211 (emphasis added). No advance notice is required when "[a] change in the level of medical care is prescribed by the recipient's physician." 42 C.F.R. § 431.213(f). The agency must grant an opportunity to a recipient who requests it because he or she believes the agency has taken an action erroneously. 42 C.F.R. § 431.220(a)(2). When the recipient requests a hearing, the agency may not terminate *or reduce services* until a decision is rendered after the hearing unless the agency "promptly informs the recipient in writing that services are to be terminated *or reduced* pending the hearing decision." 42 C.F.R. § 431.232 (emphasis added). Finally, the hearing must cover "[a]gency decisions regarding the *type or amount* of services." 42 C.F.R. § 431.241 (emphasis added).

■ Clearly these federal notice regulations envision *written* notice and hearing if requested when the amount or type of services are reduced. Indeed, when those members whose case is covered directly by AHCCCS, written notice is provided when denying authorization for requested services. Defendant's Statement of Facts Exhibit F. However, under the present system when the denial is from one of the qualified health plans, AHCCCS only "suggests and encourages" written notice but permits the health plans to provide notice verbally. Defendant's. Statement of Facts Ex. F ¶ 3. Defendants assert that this system "seems to work." Defendant's Cross-Motion at 7.

Chen's position is not supported by the record. First, in Andrew and Mary Ann's cases, the health provider delegated its "oral" duty to inform them of the termination in services to a hospital and a Walgreens employee respectively. This is certainly not in keeping with AHCCCS's current policy.

Plaintiff Perry's dentures have been approved, but the facts suggest it was not because AHCCCS procedures and Medicaid regulations were followed. When Mercy Care Plan initially denied Perry's dentures, her primary care physician, Dr. Wanda Torrey orally told her of the denial. She was given no reason as to the denial, nor was she advised of her right to appeal. Perry contacted present counsel, Sally Hart Wilson of Southern Arizona Legal Aid. Wilson contacted Dr. Torrey seeking the reason for the denial and a copy of the notice from the health plan Wilson was advised that she would have to pay a fee for Perry's records. Wilson then put her request in writing and never received a response from the doctor.

This lawsuit was filed on March 3, 1995. On March 16, 1995, Wilson wrote Mercy Care directly requesting the information and again, received no response. On August 17, 1995, Wilson wrote Mercy Care's lawyer, Susan Watchman. Watchman advised Wilson that Perry's appeal was stayed by the lawsuit but that Mercy Care had decided to provide the dentures. According to Chen, Mercy Care reopened the decision to deny Perry's dentures by requesting additional documen-

tation from Dr. Torrey to support the "medical necessity" requirement.

Plaintiffs Warrington and Carlton also had to resort to a lawyer when their services were terminated. In their cases, the provider provided notice that the service was to be terminated, but neither knew the reason for the denial, nor of any appeal rights. Both Warrington and Carlton are clients of the Department of Economic Security, Division of Developmental Disabilities (DDD). DDD is designated by Arizona as their program contractor and as such, DDD contracts with various AHCCCS health plans for Medicaid covered services. It is undisputed that DDD ordered that Warrington's services be continued pending appeal. Carlton paid for her diapers pending appeal and it was only after DDD ordered the health plan to reimburse her that she was paid. Thus, these plaintiffs contend that the present AHCCCS system does not work and denies them with any meaningful notice and an opportunity to challenge an adverse decision.

■ In *O'Bannon v. Town Court Nursing Center*, 447 U.S. 773, 787, 100 S.Ct. 2467, 2476, 65 L.Ed.2d 506 (1980), the Supreme Court held that a medicaid recipient had no interest in receiving benefits from a particular facility and therefore no right to a hearing before being transferred to a qualified nursing home. *Id.*, 447 U.S. at 785, 100 S.Ct at 2475. *O'Bannon* concerned nursing homes which had been decertified under Medicaid and the trauma suffered by Medicaid patients who then had to be transferred to another qualified facility. The Supreme Court characterized the benefit of being able to choose a particular nursing home from a list of qualified homes as an "indirect benefit" which did not trigger due process concerns. *Id.* 447 U.S. at 786–87, 100 S.Ct. at 2476. In contrast, the Supreme Court defined "direct benefits" as benefits which are:

> essentially financial in character; the Government pays for certain medical services and provides procedures to determine whether and how much money should be

paid for patient care. The net effect of these direct benefits is to give the patients an opportunity to obtain medical services from providers of their choice that is comparable, if not exactly equal, to the opportunity available to persons who are financially independent. The Government cannot withdraw these direct benefits without giving the patients notice and an opportunity for a hearing on the issue of their eligibility for benefits.

*Id.* Here, the question is, "Should providing dentures, speech therapy and adult diapers be considered a direct benefit?"[1] In an ordered society the answer must be, yes. Without teeth, one's ability to eat, talk and physical appearance are dramatically impaired. Failure to provide speech therapy for a youngster or disposable diapers for an adult woman are decisions which should be resolved not at the therapist's or the drugstore's door, but at a fair hearing.

While *Mathews* tells us that due process is a flexible concept which requires a balancing of the interests. Here, Congress has spoken and tipped the scales in favor of the private interest at stake. The scope of duty is defined by 42 C.F.R. § 431.210. As such, the Court concludes that the health plans must comply with those provisions and provide sufficient written notice and a right to a fair hearing. Chen argues that the system will grind to a halt under these extra burdens. The Court is unpersuaded. The reason is that Chen presently gives its own fee-for-service beneficiaries written notice. That being the case, Chen's argument fails.

Additionally, the health plans and AHCCCS already have grievance procedures in place to handle appeals of dissatisfied beneficiaries. Under the present system, each enrollee is given a handbook by the participating health provider. The handbook sets forth the enrollee's rights, benefits and appeal procedures. A dissatisfied enrollee may grieve an adverse decision with the health plan and if still not satisfied, may appeal the decision to AHCCCS. A problem with this

---

**1.** In contrast, an *O'Bannon* "indirect benefit" in this case would be that these plaintiffs are guaranteed that their respective health plans have been qualified by AHCCCS as meeting minimum standards of care. As such, beneficiaries may choose among the AHCCCS health plans, but have no right to choose any health plan not so qualified.

procedure, however, is that many enrollees are long-term AHCCCS beneficiaries. As such, handbooks become lost or the grievance procedures forgotten. A by-product of today's decision is that more beneficiaries may elect to grieve adverse decisions because they will be reminded of this avenue of redress. This is not an increased burden as Chen suggests. Rather it only allows beneficiaries to exercise a right that has always been available to them.

To avoid any confusion, the Court holds that today's decision does not pertain to those situations where the AHCCCS member's own physician decides that a particular service is not medically necessary. Rather, the Order applies only to those situations involving either a denial, termination, reduction or suspension of a service made by an AHCCCS health plan.

## V. CLASS CERTIFICATION

Pursuant to Fed.R.Civ.P. 23(b)(2) Plaintiffs seek to represent:

> All persons entitled to AHCCCS benefits who have been or will be denied medical services without receiving notices setting out the reasons for denial and descriptions of their appeal rights.

At oral argument the Court concluded that class certification is not required in this case. After a review of the pleadings, that decision is affirmed. The Court finds that Chen's offer to stipulate that any relief entered in this matter will be binding on future AHCCCS beneficiaries is the more manageable and practicable way to proceed.

## VI. CONCLUSION

**THEREFORE, IT IS ORDERED** that Plaintiffs' Motion for Summary Judgment is **GRANTED** and Mabel Chen's Cross–Motion for Summary Judgment is **DENIED**; judgment is hereby entered in favor of Plaintiffs and against Defendant; each party to bear their respective attorneys' fees. As the prevailing party, Plaintiffs may submit a bill of costs to the Clerk of the Court in accordance with Local Rule 2.19.

**IT IS FURTHER ORDERED** that Mabel Chen in her capacity as Director of Arizona's Health Cost Containment System:

(1) has failed to give AHCCCS beneficiaries written notice with respect to decisions denying them medical services and this conduct violates the Constitution, federal Medicaid statute and implementing regulations;

(2) is hereby enjoined from failing to provide AHCCCS beneficiaries with written notices and hearing concerning decisions denying medical services; and (3) is hereby ordered to provide AHCCCS beneficiaries with written notices of decisions denying them coverage of medical services that set out the specific factual and legal bases for the decision and describe the process for appealing the denial decisions in accordance with 42 C.F.R. § 431.200 *et. seq.* for federally funded AHCCCS members and at a minimum, with the due process clause of the fourteenth amendment for state-funded AHCCCS members.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Class Certification is **DENIED.**

This Order having resolved all outstanding issues, the Clerk of the Court shall enter judgment and close this case forthwith.