**Gail GLOVER on Behalf of Herself and All Other Persons Similarly Situated, Plaintiff,**

v.

**CRESTWOOD LAKE SECTION 1 HOLDING CORPORATIONS, Jonathan Woodner Company, Ian Woodner and Michael D. Aiello, Defendants.**

**No. 89 Civ. 5386 (MJL).**

United States District Court, S.D. New York.

Aug. 7, 1990.

Westchester Legal Services by Jerrold M. Levy, John T. Hand, Yonkers, N.Y., Sullivan & Cromwell by John E. Kirklin,

David B. Tulchin, William J. Snipes, New York City, for plaintiff.

Bobrow, Greenapple & Skolnik by Lawrence Greenapple, New York City, for defendants.

## OPINION AND ORDER

LOWE, District Judge.

Before this Court is plaintiff Gail Glover's motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure and for partial summary judgment. For the reasons discussed below, plaintiff's motion for class certification is granted and plaintiff's motion for partial summary judgment is granted in part and denied in part.

## BACKGROUND

This Court previously issued two opinions in connection with this action, *Bronson v. Crestwood*, 724 F.Supp. 148 (S.D.N.Y.1989); March 8, 1990 Opinion and Order, familiarity with which will be presumed.

Briefly, this action challenges the rental policies of Crestwood Lake Apartments ("Crestwood"), a complex located in Yonkers, New York, under Title VIII of the Civil Rights Act of 1968 and various state housing laws. Plaintiff alleges that Crestwood's rental policies—variously consisting of its refusal to consider applications of any person who receives Section 8 federal housing assistance or whose income is not at least three times the rent of the apartment for which that person is applying—disproportionately and adversely impacts upon black and hispanic ("minority") applicants for tenancies in comparison to white applicants. Plaintiff also claims that defendants rely on other improper criteria for selecting tenants such as the applicant's familial status, marital status, and age.

In an earlier opinion, we preliminarily enjoined defendants from considering a number of factors in evaluating the then named plaintiffs' applications for apartments at Crestwood, including whether they had income in excess of three times the rent or whether their tenancies required entry into the standard Section 8

lease. 724 F.Supp. 148. When these initial plaintiffs, Ruth Bronson and Lisa Carter, withdrew their applications because they alleged that "defendants' actions over the course of this litigation [ ] persuaded plaintiffs that they no longer desire[d] the object of the litigation—an apartment at Crestwood," March 8, 1990 Opinion and Order at 4, we granted Gail Glover's motion to intervene and noted that we would consider the then pending motion for class certification after the parties submitted new briefs which reflected Ms. Glover's substitution as the named plaintiff. The parties have since submitted such briefs and we will now consider plaintiff's motion for class certification along with her present motion for partial summary judgment.

Plaintiff seeks to certify a class defined as all black and hispanic persons [1] residing in the City of Yonkers, New York, who a) are or will be determined eligible to participate in the Section 8 Housing Voucher Program, b) can afford to pay the rents at Crestwood, and c) are or will be denied the opportunity to rent housing accommodations at Crestwood because of their Section 8 status, the terms of the Section 8 lease, the source or amount of their income, their race, their familial or marital status or their age.

As of July 13, 1989, 87 of the 107 holders of housing vouchers issued by the Municipal Housing Authority ("MHA") for the City of Yonkers were minority persons. Affidavit of Jeffrey Lubell at ¶¶ 6, 7. Minority persons hold another 44 Section 8 housing vouchers authorized by the City of White Plains to secure housing in the City of Yonkers.[2] Should any of these participants not use their vouchers prior to the termination of the six month period following issuance, the voucher is transferred to an individual on the waiting list, which, as of July 13, 1989, consisted of 2055 applicants. Lubell Affidavit at ¶ 9.

In addition to her motion for class certification, plaintiff has moved for partial summary judgment alleging that certain criteria defendants have relied on, and continue to rely on, in disfavoring plaintiff and other members of the class, violate federal and state laws. Specifically, plaintiff seeks a finding that it is invalid as a matter of state and federal law for defendants to 1) consider applicants' familial status, marital status and age in evaluating them as tenants, 2) refuse to enter into Section 8 leases, and 3) refuse to consider a person with one child for a one-bedroom apartment and a person with three children for a two-bedroom apartment at Crestwood, when they allow two adults to rent a one-bedroom apartment and two adults with two children to rent a two-bedroom apartment.[3]

Gail Glover had originally been awarded a one-bedroom voucher by the County of Westchester for herself and her daughter.[4] She was allegedly told by Margaret Naughton, a rental agent for Crestwood, that Crestwood does not rent one-bedroom apartments to a person who has a child and that Crestwood would only accept an application from Glover for a two- or three-bedroom apartment. Affidavit of Margaret Harris at ¶ 5. Maria Cruz, another member of the proposed class, had been awarded a two-bedroom voucher by the MHA for herself and her two sons and a daughter. She was allegedly told by Naughton that she could only apply for a three-bedroom apartment because it was the policy of Crestwood to only offer three-bedroom

---

1. It should be noted that through an avalanche of correspondence the parties have informed the court of other members of the proposed class who have allegedly been denied apartments at Crestwood. Included among these is Maria Cruz who applied for a two-bedroom apartment without air conditioning for herself and her two sons and a daughter.

2. Plaintiff also submits, upon information and belief, that in addition to these 131 minority Section 8 voucher holders, there are 69, mostly minority persons, with Section 8 vouchers is-

sued by the County of Westchester who reside in southwest Yonkers.

3. While plaintiff initially sought a permanent injunction as well, she has since withdrawn, without prejudice to renewal later, her request for injunctive relief on this motion.

4. Glover has since become pregnant and expects to receive a two-bedroom voucher upon the birth of her second child.

apartments to persons with more than two children. *Id.* at ¶ 8.

We now consider plaintiff's motions for class certification and partial summary judgment.

## DISCUSSION

### I

A court may certify a class under F.R. C.P. Rule 23 if the moving party demonstrates that a) the four requirements set forth in Rule 23(a)[5] are met and b) the action falls within one of the categories enumerated in Rule 23(b)[6].

*Numerosity*

■■■ The first prerequisite to maintaining a suit as a class action is that "the class is so numerous that joinder of all members is impracticable." Fed.R.Civ.P. 23(a)(1). While plaintiff argues that this Court should look to the number of Section 8 voucher holders residing in Yonkers who are minority persons and can afford an apartment at Crestwood in determining whether the proposed class satisfies the numerosity requirement, defendants argue that the operative number is the number of voucher holders who have actually applied for housing at Crestwood.

We are persuaded that plaintiff's defined class is the proper one to look at since, as we stated in our earlier opinion, the possible reason there have been few Section 8 voucher holders who have applied for ten-

ancies at Crestwood is that "potential applicants who receive Section 8 subsidies have been dissuaded from applying at Crestwood due to their constructive knowledge that large apartment complexes in East Yonkers engage in practices such as those employed by Crestwood." 724 F.Supp. 148, 160. It surely would be unfair to allow defendants to defeat class certification merely by pointing to the fact that few minority Section 8 voucher holders have sought apartments at Crestwood when this would be an expected consequence if in fact defendants engaged in the discriminatory practices alleged by plaintiff.

Defendants further contend, however, that even looking at the class proposed by plaintiff, the number of minority voucher holders who both continue to be in the rental market and would actually be able to afford an apartment at Crestwood is limited. While defendants are correct in noting that plaintiff has not provided precise numbers as to how many of the minority voucher holders are actively seeking a rental apartment in Yonkers and have sufficient subsidies to cover the rent at Crestwood and their projected needs, satisfaction of the numerosity requirement of Rule 23(a)(1) is not dependent exclusively on mathematical calculation. Rather, where a party is seeking to remedy an alleged discriminatory practice that would clearly affect more people than that individual, a

---

**5.** Rule 23(a) provides that:

[o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative party are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed.R.Civ.P. 23(a).

**6.** Rule 23(b) provides that "[a]n action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

(1) the prosection of separate actions by or against individual members of the class would create a risk of

(A) inconsistent or varying adjudications with respect to individual members of the class

which would establish incompatible standards of conduct for the party opposing the class, or

(B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class; thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy...."

Fed.R.Civ.P. 23(b).

combination of quantitative and qualitative factors should be considered in determining whether the numerosity requirement is satisfied. *See Gurmankin v. Costanzo*, 626 F.2d 1132, 1135 (3rd Cir.1980) (while court may deny certification if the number of affected individuals is too few to warrant class treatment, the numerosity requirement requires contextual evaluation and may pose less of an obstacle in instances of class-wide discrimination where the representative party seeks only prospective remedial relief rather than damages); *Jones v. Diamond*, 519 F.2d 1090, 1100 (5th Cir. 1975) (the general policy of liberal construction of civil rights class actions applies to the Rule 23(a)(1) numerosity requirement).

This Court is satisfied that the number of current and prospective minority Section 8 voucher holders in Yonkers is sufficiently large to include within it a significant number of individuals who would qualify to rent housing at Crestwood if objective, non-discriminatory criteria were utilized. *See Payton v. Abbott Labs*, 83 F.R.D. 382, 387 (D.Mass.1979) (magnitude of plaintiff's initial showing indicated that class was more likely than not so numerous that joinder of its members would be impracticable, even though statistics did not specifically isolate plaintiff class from larger group of non-class members). Moreover, the ongoing nature of the housing voucher program which tends to generate a continually rotating pool of current voucher holders through the transfer of expired vouchers to wait-listed applicants suggests that joinder of each individual class member would be impracticable.

It is also likely that class members would feel considerable apprehension in joining this action due to the well-documented opposition to racial integration of Yonkers by the City government and the general population. *See, e.g., Horn v. Associated Wholesale Grocers, Inc.*, 555 F.2d 270, 275 (10th Cir.1977) (apprehension that judicial system would not support class members' claim and that employer may be offended is a factor in determining impracticability). In *United States v. City of Yonkers*, 624 F.Supp. 1276, 1289–91 (S.D.N.Y.1985), Judge Leonard B. Sand found that the City

of Yonkers engaged in intentional, unlawful discrimination over the past forty years and that there has been wide and brazen opposition to the integration of Yonkers by the City Government and the general population.

Finally, and perhaps most importantly, since all of the proposed class members either receive public assistance or disability assistance or have limited incomes, it is reasonable for this Court to assume that they would probably be unable to secure their own counsel and, in any event, are very likely unaware of their legal rights. *See United States ex rel. Morgan v. Sielaff*, 546 F.2d 218, 222 (7th Cir.1976) (when class members are poor and unaware of their rights, class action is appropriate).

Consequently, plaintiff has satisfied the numerosity requirement.

*Common Questions of Law and Fact*

The second prerequisite of Rule 23(a) is that there be questions of law or fact common to the members of the proposed class. Fed.R.Civ.P. 23(a)(2). Defendants argue that plaintiff has not satisfied this requirement because the circumstances of each actual and potential applicant will be different.

Plaintiff alleges that defendants in selecting applicants for Crestwood rely on a number of criteria each of which has a substantially disproportionate and adverse impact upon minority persons. Although defendants may be correct in concluding that certain members of the proposed class might be excluded based on one of these criteria while other members of the proposed class may be denied a tenancy based on another of these criteria, in each instance the claim will be that Crestwood utilized a discriminatory selection practice in rejecting the application. Even though some of the proposed class members may have a somewhat different claim against defendants, a showing that defendant discriminated against plaintiff "in the same general fashion" as against the other proposed class members satisfies the commonality requirement. *Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 597 (2nd Cir.

1986). Plaintiff has made such a showing and therefore has satisfied the commonality requirement.

## Typicality Requirement

The third prerequisite to maintaining an action as a class action is that the claims of the class representative must be typical of the claims of the other class members. The typicality requirement is satisfied whenever the named plaintiff's claim arises from the same practice or policy from which the proposed class members' claims arise or upon which the proposed class member's legal theory is based. *Norwalk CORE v. Norwalk Relocation Agency*, 395 F.2d 920, 937 (2nd Cir.1968). *See also David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 757 (S.D.N.Y.1988); *Bruce v. Christian*, 113 F.R.D. 554, 558 (S.D.N.Y.1986). The named plaintiff, Glover, is a minority person living in Yonkers who claims she was denied the opportunity to rent at Crestwood as a result of Crestwood's refusal to rent to Section 8 voucher holders or to applicants who do not meet a triple income test—a practice which would also deny the proposed class members, also minorities living in Yonkers, housing accommodations at Crestwood.

Glover further maintains that she was denied a tenancy at Crestwood because of her familial status, marital status, and age; and challenges this practice as violation of federal and state fair housing laws. It is of course very likely that many of the members of the proposed class will be young, single or parents.

As a result, this Court finds that plaintiff's interests are coextensive with those of the proposed class members and that she has therefore fulfilled the typicality requirement.

## Adequacy of Representation

To determine whether a plaintiff moving for class certification has fulfilled the adequacy of representation requirement of Rule 23(a)(4), the reviewing court must examine the quality of plaintiff's counsel and ascertain whether a conflict of interests exists between the plaintiff and the proposed class members. *David v. Showtime/The Movie Channel, Inc.*, 697 F.Supp. 752, 757 (quoting *Fisher v. Plessey Co. Ltd.*, 103 F.R.D. 150, 157 (S.D.N.Y. 1984)). There appears to be no conflict between the interests of the named plaintiff and the interests of the absent class members since they would all gain the opportunity to rent at Crestwood if plaintiff is successful in removing those barriers she claims defendants have erected. Although they all may not be successful in obtaining a Crestwood apartment, they would all be evaluated for an available apartment based on legitimate, objective criteria.

Furthermore, this Court has no reason to believe that plaintiff would not vigorously advance the claims of the other members of the proposed class. Plaintiff bears virtually no financial burden since she is being represented by Westchester Legal Services, Inc., which provides free legal services to indigent people, and by Sullivan & Cromwell, which is representing plaintiff on a *pro bono* basis. The legal competency of plaintiff's counsel and their ability to adequately and fairly litigate the present action is beyond reproach.

## Fed.R.Civ.P. 23(b)(2)

Fed.R.Civ.P. 23(b)(2) requires that the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). "[I]t is well established that civil rights actions are the paradigmatic 23(b)(2) class suits, for they seek class-wide structural relief that would clearly redound equally to the benefit of each class member." *Marcera v. Chinlund*, 595 F.2d 1231, 1240 (2nd Cir.), *vacated on other grounds*, 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979). Because plaintiff seeks declaratory and injunctive relief to halt what she alleges are defendants' unlawful, discriminatory rental policies, which exclude all members of the class from renting at Crestwood, class certification is proper.

Having met the requirements for maintenance of a class action under Fed.R.Civ.P.

23, plaintiff's motion for class certification is granted.

## II

By the instant motion for partial summary judgment, plaintiff asks this Court to find that in making its tenant application and selection decisions, defendants may not rely upon an applicant's familial status, marital status, or age or consider the requirements of the Section 8 voucher program.

■ In opposing plaintiff's motion, defendants first argue that there are material issues of fact as to the criteria relied on by defendants in making tenant selection decisions. While there may be some substance to plaintiff's claim that one of the reasons it is unclear as to what criteria defendants utilize in choosing tenants is that they "have set upon the strategy of defending against this housing discrimination suit by a pattern of adding, subtracting, shifting, and restructuring the purported justifications advanced for refusing the tenancy applications at Crestwood of minority Section 8 voucher holders," Plaintiff's Rely Memorandum at 1; *see also* 724 F.Supp. 148, 157–158, we nevertheless can not grant summary judgment in plaintiff's favor unless we are persuaded that there are no material facts in issue as to the claims in question.

For this reason, even though plaintiff is correct as a matter of law that defendants may not rely upon the familial status, marital status or age of applicants in making tenant selection decisions [7], there is a factual dispute as to whether defendants did in fact, and do continue to, consider these factors directly in evaluating the application of Glover and the other members of the class.[8] Plaintiff points to the affidavit of Michael J. Bello, the Chief Financial Officer of the defendant Jonathan Woodner Company and a letter from defendants' counsel to support her allegation that defendants did rely and continue to rely on the familial status, marital status, and age of Gail Glover and other voucher holder applicants in making tenant decisions.[9] For example, Mr. Bello states that Crestwood "compared Ms. Glover, a 19 year old single mother of a three year old child with no credit history, no assets and six months of rental experience in her present apartment and concluded that Mr. Nance's family would be more desirable tenants at Crestwood." Bello Affidavit at ¶ 3. Also, defendants' counsel characterized Glover and another class member as follows:

"Gail Glover, a 19 year old single mother of a three year old child, who has no personal property, bank accounts or other assets, no credit history, and six months residence in her present apartment, and [ ]the patently frivolous applicant, Miranda Brown, a 23 year old sin-

7. By 1988 amendments to the Fair Housing Act, Title VIII, 42 U.S.C. § 3601 *et seq.*, Congress added "familial status," defined essentially as the status of having a child or children under 18 years, to the list of prohibited bases for refusing to rent a dwelling to a person. 42 U.S.C. §§ 3602(k), 3604(a) & (b). *See also* 24 C.F.R. §§ 100.50(b)(1), 100.60(a) & (b)(2), 100.65(a).

Moreover, New York Executive Law § 296(5)(a)(1) & (2) condemns "marital status" and "age" as legitimate bases for refusal to rent housing accommodations to any person or group of persons.

8. It is clear, however, that defendants do consider the familial status of applicants indirectly when limiting the apartments available to single parents with children. *See infra,* pp. 309–310.

9. Plaintiff also argues that all of the factual assertions set forth in her separate statement

attached to her notice of motion must be deemed admitted by defendants, pursuant to Rule 3(g) of the Civil Rules of the Southern District, since defendants failed to submit their own 3(g) statement with their response papers. Defendants have since submitted a 3(g) statement controverting many of the factual assertions contained in plaintiff's 3(g) statement, including whether Crestwood denies applications of Section 8 voucher holders on the basis of familial status, marital status, or age.

Prior to the filing of defendants' response papers, plaintiff and defendants had been engaged in settlement discussions and plaintiff Glover had withdrawn and then reinstated her application for an apartment. *See* July 20, 1990 Letter from Greenapple; July 23, 1990 Letter form Kirklin. As a result, there was some confusion as to the return date of plaintiff's motion for partial summary judgment. Because of this confusion, we will accept defendant's 3(g) statement as having been properly submitted.

gle mother of five young children who dropped out of Hillcrest Junior High School, never worked, has no assets, no credit history."

February 1, 1990 Letter from Greenapple. While the Bello Affidavit and counsel's letter suggests that defendants are relying on these factors when considering the applications of Glover and other voucher holders, the statements contained therein are not conclusive as to this reliance since the references to the familial status, marital status, and age of Glover and other voucher holders may have been included for no other reason than to be descriptive. As a result, whether defendants relied on these factors in making their tenant selections is an issue that must be resolved at trial.

■ Defendants do not dispute, however, the facts underlying plaintiff's other claims. Defendants have already acknowledged that they rely on provisions of the standard Section 8 voucher lease in denying or refusing rental units at Crestwood to Section 8 voucher holders. In opposing Bronson and Carter's earlier motion for a preliminary injunction, defendants stated that their refusal to accept Section 8 voucher applicants stemmed from their reluctance to depart from their standard lease agreement. 724 F.Supp. 148, 155–156. Defendants also have not denied plaintiff's allegation that Crestwood will not rent a one-bedroom apartment to a person with one child or a two-bedroom apartment to a person with three children, even though they will rent a one-bedroom apartment to two adults and a two-bedroom apartment to a married couple with two children. *See* Defendants' Rule 3(g) Statement.

42 U.S.C. § 1437f(t), which is entitled "Nondiscrimination Against Certificate Holders and Voucher Holders," provides that no owner:

"who has entered into a contract for housing assistance payments under this section on behalf of any tenant in a multifamily housing project shall refuse to lease any available dwelling unit in any multifamily housing project of such owner to a holder of a voucher under subsection (*o*) of this section, and to enter into a

voucher contract respecting such unit, a proximate cause of which is the status of such prospective tenant as holder of such voucher."

42 U.S.C. § 1437f(t)(1)(B). Crestwood currently has four tenants who receive Section 8 subsidies under the Section 8 certificate program, which is similar to the Section 8 voucher program. *See* 724 F.Supp. 148, 156 (for discussion concerning differences between the Section 8 certificate program and the Section 8 voucher program). The above provision clearly dictates that owners who accept housing assistance subsidies under the Section 8 certificate or voucher program for some units cannot refuse to rent units to Section 8 voucher holders because of their participation in that program. Nevertheless, defendants have made clear that they now find "unacceptable" several HUD–mandated provisions of the standard Section 8 voucher lease. Defendants' Memorandum of Law at 11 and 13.

In defending against this claim, defendants do not deny that plaintiff's and the other class members' participation in the Section 8 voucher program is "a proximate cause" of Crestwood's refusal to lease an available apartment to them. 42 U.S.C. 1437f(t). Rather, defendants contend that plaintiff's claim must be rejected because 42 U.S.C. 1437f(t) does not create a private right of action against private landlords.

The intent of Congress governs whether a statute creates a private cause of action. *Universities Research Association v. Contu,* 450 U.S. 754, 770, 101 S.Ct. 1451, 1461, 67 L.Ed.2d 662 (1981); *Texas Industries, Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 639, 101 S.Ct. 2061, 2066, 68 L.Ed.2d 500 (1981). The legislative history of the bill that introduced § 1437f(t) as part of the Housing and Community Development Act of 1987 indicates that Congress did intend to create a private right of action to enforce 42 U.S.C. 1437f(t) against private landlords. The House report states with reference to provisions of that bill, which included § 1437f(t) (Section 147 of the bill), the following:

The provisions of this bill are intended to benefit applicants and tenants. The assisted housing programs have been created specifically to assure lower income households have greater access to decent and affordable housing than their limited incomes would otherwise permit. The Committee intends, and has always intended, that applicants and tenants who are adversely affected by violations of these statutory provisions should have a cause of action to enforce the statute in federal court. In the past, such causes of action were not explicitly specified in the statute because program beneficiaries were thought to be able to protect their interest under the Administrative Procedure Act, Sec. 1983, and the implied cause of action doctrine. Because the courts have been somewhat unreceptive to private causes of action, the Committee wishes to clarify its long-standing intention in favor of private enforcement.

House Report No. 100–122(I), 1987 U.S. Code Cong. and Adm.News, p. 3369. The House Report further clarifies that § 1437f(t) is enforceable in court against private landlords:

The Committee is very concerned about the problems experienced by holders of Section 8 certificates and vouchers in securing units in which to use their portable subsidies. Because owners often unreasonably refuse to rent units to applicants who hold these portable subsidies, this bill contains several provisions to change the practices of owners involved in other federal housing programs. Section 147 of the bill creates an enforceable right for applicants that would prohibit owners that receive Section 8 subsidies for any other units in the project from refusing to rent a unit to a certificate or voucher holder.... because the applicant has a Section 8 certificate or voucher housing subsidy.

1987 U.S.Code Cong. and Admn. News., p. 3348. The legislative history thus shows that Congress clearly intended that Section 8 subsidy recipients have a private right of action to enforce 42 U.S.C. § 1437f(t) against private landlords.

Crestwood's refusal to accept certain provisions of the HUD-mandated Section 8 voucher lease cannot be interpreted as anything but a refusal to rent an apartment to a Section 8 voucher holder applicant as a result of that applicant's status as a Section 8 voucher holder. Since Crestwood has previously entered into contracts for housing assistance payments on behalf of its four Section 8 certificate tenants, its actions clearly violate the anti-discrimination provision, 42 U.S.C. § 1437f(t).

■ The final remaining issue is whether defendants' policy of barring a single parent with one child from occupying a one-bedroom apartment at Crestwood and a single parent with three children from occupying a two-bedroom apartment, while allowing two adults to share a one-bedroom apartment and two adults and two children to occupy a two-bedroom apartment, constitutes discrimination on the basis of familiar status.

In justifying this policy, defendants cite regulations promulgated by the Department of Housing and Urban Development ("HUD") which reserve to the owner the right to adopt reasonable policies for the selection of tenants and the matching of family size with apartment size. *See* 24 C.F.R. Ch. 1, Subch. A, App. 1, p. 547. *See also Doe v. City of Butler*, 892 F.2d 315, 324 n. 5 (3rd Cir.1989). In arguing that their policy is reasonable, defendants point to the fact that "HUD's standards for determining the appropriate unit size for which a family applying for a Section 8 voucher is eligible.... are precisely in conformity with Crestwood's standards for granting apartments to tenants." Defendants' Memorandum of Law at 16. Yet, in the instant case, the public entities implementing the HUD guidelines, the County of Westchester and the MHA, assigned Gail Glover a one-bedroom voucher for herself and her female child and awarded a two-bedroom voucher to Maria Cruz for herself and her two sons and a daughter, respectively.

The only reasonable basis for Crestwood to depart from these official determinations would be if the size of the specific sleeping

areas, bedrooms, or dwelling units in question did not allow for the number of occupants covered by the vouchers awarded. Since defendants permit two adults to occupy a one-bedroom apartment at Crestwood and two adults and two children to occupy a two-bedroom apartment at Crestwood, Crestwood has no reasonable basis to refuse to accept a one-bedroom voucher for a single mother and her daughter and a two-bedroom voucher for a single mother and her three children.

HUD has stated, with reference to governmental occupancy standards, that the Fair Housing Act "is intended to allow reasonable.... limitations on occupancy to continue as long as they are applied to all occupants, and do not operate to discriminate on the basis of familial status...." 24 C.F.R. Ch. 1, Subch. A, App. 1, p. 547. *See also* House Rep. No. 100–711, 1988 U.S.Code Cong. and Adm. News, p. 2192. Moreover, as previously noted, the Fair Housing Act makes it unlawful for an owner "[t]o refuse to.... rent.... or otherwise make unavailable or deny a dwelling to any person because of.... familial status." 42 U.S.C. § 3604(a).

It is the finding of this Court that defendant's practice of refusing to rent an apartment to a Section 8 voucher holder solely on the basis of that household's size when they would rent that same apartment to the same sized household where there is the presence of an adult instead of a child constitutes discrimination on the basis of familial status. Landlords may not refuse applicants apartments which they can afford and desire solely because these households do not conform with the landlord's traditional notions of what constitutes a family unit. If the landlord would make that size apartment available to a household consisting of the same number of individuals, but with more adults and less children, the landlord must accept the otherwise qualified Section 8 household as a tenant for that size apartment. Otherwise, the landlord is guilty of discriminating against that household on the basis of that family's familial status. Since Crestwood

has admitted to such a practice, it has been unlawfully discriminating against applicants who are single parents.[10]

It Is So Ordered.

---

**10.** Defendants' motion for sanctions pursuant to Fed.R.Civ.P. 11 is therefore denied.