Mary CARR, et al., Plaintiffs,

v.

**Patricia WILSON–COKER, Commissioner of the Department of Social Services, Defendant.**

No. CIVA3:00CV01050(AWT).

United States District Court, D. Connecticut.

March 30, 2001.

Jamey Lynette Bell, Gregory Lee Bass, Victoria L. Veltri, Greater Hartford Legal Assistance, Robert Reginald Simpson, Updike, Kelly & Spellacy, P.C., Hartford, CT, Priya Sinha Cloutier, Connecticut Legal Services, Inc., New London, CT, Paulette G. Annon, State of Connecticut Office of Protection & Advocacy for Persons with Disabilities, Hartford, CT, for plaintiffs.

Hugh Barber, Richard J. Lynch, Marianne Horn, Tanya Feliciano, Attorney General's Office, Health & Human Services, Michael P. Shea, Day, Berry & Howard, Cityplace, Karen H. Fritzinger, Attorney General's Office, Employment Rights, Hartford, CT, for defendant.

### RULING ON MOTION FOR CLASS CERTIFICATION

THOMPSON, District Judge.

The plaintiffs have brought suit against the defendant, Patricia Wilson–Coker, in her capacity as Commissioner of the Connecticut State Department of Social Services, for an alleged violation of federal Medicaid law by failing to provide reasonable and adequate access to oral health services furnished by dental providers for the adult and child recipients of the Connecticut "Husky A" Medicaid program.

The plaintiffs seek, *inter alia,* a declaratory judgment, pursuant to 28 U.S.C. § 2201–02, declaring that the defendant has violated federal statutory and regulatory provisions by:

1) failing to provide payments at a level sufficient to attract a sufficient number of dental providers so that Medicaid recipients receive the same access to dental care enjoyed by the general population;

2) failing to adopt and maintain programs and policies which operate to make dental care available for Medicaid recipients throughout Connecticut;

3) providing dental reimbursement rates and procedures for payment that are so unreasonable that oral health care is unavailable or obtained only after great delay and harm to the health of the Connecticut Medicaid recipient, and quality of care is undermined;

4) maintaining inadequate dental provider reimbursement rates and claims processing requirements, and thereby failing to provide proper and efficient operation of

the program, failing to give eligible Medicaid recipients needed care with reasonable promptness, and failing to ensure that care is provided in a manner consistent with simplicity of administration and the best interests of the recipients;

5) failing to ensure adequate participation by Connecticut dental providers in the Medicaid program, which results in some Medicaid recipients in the state being able to obtain sufficient dental care while others cannot;

6) failing to adhere to the requirement that claims of participating dental providers be paid promptly and efficiently, resulting in denials of open and timely dental access for Connecticut Medicaid recipients;

7) failing to implement the requirement that Medicaid beneficiaries under age 21 be effectively informed of the availability of early and periodic screening, diagnostic and treatment services, including dental services, and of the benefits of preventive dental health care;

8) failing to provide or arrange for provision of: periodic dental screening to assess the plaintiffs' dental health; diagnostic dental services; and treatment identified during the dental screenings, under the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program; and

9) failing to provide case management services, transportation and scheduling assistance to enable the plaintiffs to obtain dental services required under the EPSDT program.

The plaintiffs have filed a motion for class certification, pursuant to Rule 23 of the Federal Rules of Civil Procedure. They request certification of a class consisting of all individuals in Connecticut who are or will be eligible for Medicaid managed care Husky A benefits, and are or will be seeking dental health services. In addition, they request certification of a subclass consisting of all children in Connecticut who are now or will be under the age of 21, are or will be seeking dental health services, and are or will be eligible for Medicaid managed care Husky A benefits.

For the reasons set forth herein, the plaintiffs' motion for class certification is being granted.

## I. *Facts*

### A. *Statutory and Regulatory Requirements under Federal Medicaid Law*

Medicaid is a joint federal and state cost-sharing program to finance medical services to low-income people. *See* Pub.L. No. 89–97, 79 Stat. 343 (codified as amended at 42 U.S.C. § 1396, *et seq.*) (the "Medicaid Act"). Through Medicaid, the federal and state governments share the costs of reimbursing health care providers, including hospitals, doctors, and dentists, for the costs of treating individuals who are unable to pay for necessary medical care. The Health Care Financing Administration ("HCFA") of the United States Department of Health and Human Services ("HSS") is the federal agency which administers the Medicaid program at the federal level by promulgating regulations which implement the Medicaid program and which are binding on participating states.

The State of Connecticut has elected to participate in the Medicaid program and consequently, is obligated to administer its program pursuant to a state plan approved by HCFA and which complies with the requirements set forth in the Medicaid Act and its implementing federal regulations. The provisions of the Connecticut state plan are mandatory with respect to all political subdivisions of the state and must be in effect statewide. *See* 42 U.S.C. § 1396a(a)(1) (Supp.2000). The Department of Social Services ("DSS") is the state agency which Connecticut has designated to oversee the administration of the state's Medicaid program. *See* 42 U.S.C. § 1396a(a)(5).

Pursuant to a federal waiver initially obtained in 1995 pursuant to 42 U.S.C. § 1396n(b), the defendant operates its Medicaid program, including the provision of dental services, under a managed care delivery system. The defendant contracts with managed care organizations ("MCO's") for the delivery of Medicaid Husky A services, including dental care. The federal waiver requires the defendant to demonstrate that the

state's Medicaid managed care program still assures recipients access to health services, including dental care.

The plaintiffs allege that the defendant maintains a continuing, systemic policy and practice of failing or refusing to address a severe shortage of Medicaid recipient access to adequate dental care provider services in Connecticut. The plaintiffs argue that this shortage is a result of:

1) unreasonably low provider reimbursement rates maintained by the defendant for Husky A-covered dental services,

2) unreasonable administrative barriers imposed by the defendant for dental providers attempting to participate in Husky A, and 3) an unreasonable lack of supportive services provided by the defendant to Medicaid recipients attempting to access dental provider services. Specifically, the plaintiffs allege, on behalf of the proposed class, that the defendant's administration of its Medicaid dental program, through the MCO's, violates the following mandates of the Medicaid Act:

1) 42 U.S.C. § 1396a(a)(30) and 42 C.F.R. § 447.204, which require that reimbursement rates be adequate to attract a sufficient number of dental providers so that Medicaid beneficiaries will have access to dental services equivalent to that enjoyed by the general insured population in the geographic area;

2) 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50(b)(1), which require that Medicaid-covered dental services be available to Medicaid recipients throughout Connecticut;

3) 42 U.S.C. § 1396a(a)(19), which requires that Medicaid programs provide such safeguards as may be necessary to assure that eligibility for dental care and services under the state plan will be determined, and such care and services will be provided, in a manner consistent with simplicity of administration and the best interests of the recipients;

4) 42 U.S.C. § 1396a(a)(8), which requires that Medicaid-covered dental services be delivered with reasonable promptness;

5) 42 U.S.C. § 1396a(a)(10)(B) and 42 C.F.R. § 440.230, which require that dental services delivered to Medicaid recipients shall not be less in amount, duration and scope than those available to other similarly eligible recipients; and

6) 42 U.S.C. § 1396a(a)(37), which requires that claims of participating Medicaid dental providers be paid promptly and efficiently.

Additionally, the Medicaid Act, under the Early and Periodic Screening, Diagnosis and Treatment ("EPSDT") program, mandates that participating states provide special outreach to, and screening and treatment of, children under the age of 21, with respect to specified medical services, including dental services. *See* 42 U.S.C. § 1396d(r)(3). Under the EPSDT program, the defendant must provide dental services "at intervals which meet reasonable standards of . . . dental practice, as determined by the State after consultation with recognized dental . . . organizations involved in child health care," as well as "at other such intervals, indicated as medically necessary, to determine the existence of certain . . . illnesses or conditions." 42 U.S.C. §§ 1396d(r)(1) and (3); *see* 42 U.S.C. § 1396a(a)(43)(B); HCFA *State Medicaid Manual* § 5110. These services must "at a minimum include relief of pain and infections, restoration of teeth, and maintenance of dental health." 42 U.S.C. § 1396d(r)(3); HCFA *State Medicaid Manual* § 5122.C. Under the EPSDT program, the defendant must further provide children with other necessary dental health care, diagnostic and treatment services, and other measures needed to correct or ameliorate defects and physical illnesses and conditions, whether or not the needed service is otherwise covered by the State of Connecticut in its plan. *See* 42 U.S.C. § 1396d(r)(5). In addition, the EPSDT provisions of the Medicaid Act require the defendant to meet specified performance targets in the delivery of dental health care services to the child Medicaid population. *See* 42 U.S.C. § 1396d(r).

The plaintiffs allege, on behalf of the proposed subclass, that the defendant has:

1) failed to implement the EPSDT program requirement that Medicaid beneficiaries under age 21 be informed of the availability of early and periodic screening, diagnostic and treatment services, including

dental services, and of the benefits of preventative dental care, in violation of 42 U.S.C. § 1396a(a)(43) and 42 C.F.R. § 441.56(a);

2) failed to provide or arrange for provision of periodic EPSDT program dental screening services to assess the plaintiffs' dental health, diagnostic dental services and treatment identified during the dental screenings, in violation of 42 U.S.C. §§ 1396a(a)(43)(B) and 1396d(r)(1)(A), and 42 C.F.R. §§ 441.56(b)(1)(vi) and 441.56(c); and

3) failed to provide EPSDT program case management services, transportation and scheduling assistance to enable plaintiffs to obtain dental services required under the EPSDT program, in violation of 42 U.S.C. §§ 1396a(a)(43)(B) and 1396d(a)(19), and 42 C.F.R. §§ 441.62.

## B. *The Named Plaintiffs*

### 1. *I.N. Brown*

I.N. Brown is a five-year-old resident of Waterbury, Connecticut. He resides with his grandmother, Mary Carr. I.N. has been a Medicaid recipient since October 1998, and is enrolled in Community Health Network ("CHN"), a MCO under contract with the defendant to deliver all Medicaid services, including dental care.

I.N. received preventive dental screening and cleaning from a community health clinic in Waterbury in late 1998. In approximately January 1999, that provider determined that I.N. needed root canals and fillings, which service was not available at that facility because I.N. needed anesthesia. The clinic referred I.N. to a dentist in Southington, Connecticut, who required that the patient pay, out-of-pocket, $250 for the anesthesia. Mrs. Carr was unable to pay for the anesthesia, so I.N. went without the treatment and suffered pain in his mouth and frequent earaches. In July 1999, during I.N.'s six-month check-up, the clinic referred him to another provider, but that provider also required that the patient pay out-of-pocket for the anesthesia. Again, Mrs. Carr was unable to pay and I.N. went without the treatment.

In March 2000, I.N.'s jaw became painfully swollen and Mrs. Carr took him to an emergency walk-in dental clinic, which pulled one of badly decayed teeth. The clinic was unable to perform the rest of the curative and restorative work on I.N.'s teeth; it sent him home with instructions to take over-the-counter pain relievers. I.N. continued to suffer mouth pain, earaches and have difficulty eating.

Also in March 2000, an employee of CHN called Mrs. Carr to remind her that I.N. was due for a medical check-up; this was the first such call they had received since I.N. became a Medicaid recipient. The CHN employee did not inquire as to I.N.'s oral health care and did not inform Mrs. Carr about the importance or availability of EPSDT program dental services for I.N. When Mrs. Carr mentioned that she had experienced difficulty finding comprehensive dental care for I.N., the employee assisted her in making an appointment at a children's dental clinic in Torrington, Connecticut, which is approximately 25 miles away from Waterbury.

In April 2000, the Torrington clinic assessed I.N.'s dental treatment needs and arranged for an oral surgery assessment at a children's medical center in Hartford, Connecticut, approximately 30 miles away from Waterbury. The assessment took place on May 23, 2000; an oral surgeon found that I.N. needed root canals and fillings, and placed him on a waiting list for surgery, which he estimated might take place in August 2000, at the earliest. As an indication of the length of time I.N. waited, the plaintiffs point out that he did not have an appointment for the surgery at the time of the filing of the complaint in this case in June 2000.

I.N. and Mrs. Carr relied on "Medicab" for transportation to his dental appointments in Torrington and Hartford. On the date of I.N.'s initial dental check-up appointment, the Medicab did not arrive to pick up I.N. and he had to wait one month for another appointment.

At the time of the filing of the complaint, I.N. continued to suffer daily pain and discomfort in his mouth, difficulty in eating, frequent earaches, and has missed school.

### 2. Breanna Smith

Breanna Smith is a five-year-old resident of Pawcatuck, Connecticut. Her family has received Medicaid since 1998. They have been enrolled in Physicians Health Services ("PHS"), a MCO under contract with the defendant to deliver all Medicaid services, including dental care, since 1998.

Breanna previously received dental care in Rhode Island, including a dental check-up there in November 1998. After the facility in Rhode Island informed Breanna's mother, Theresa Hall, that PHS would not allow the family to continue to receive care in Rhode Island, Ms. Hall called PHS multiple times in 1999, seeking a referral to a dentist who would provide care to her family. Each time PHS told Ms. Hall they would send her a booklet listing its dentists. As an indication of the length of time Ms. Hall was required to wait before being provided with a booklet listing PHS' dentists, the plaintiffs point out that she had not received such a booklet at the time of the filing of the complaint in this case in June 2000.

On or about January 14, 2000, Breanna received a dental screening by a dental hygienist at a Pawcatuck Head Start program, which revealed severe decay in her molars requiring immediate care. Ms. Hall called both dentists who were and dentists who were not referred by PHS and was informed by those dentists either that they did not participate in Medicaid any longer or that they had a waiting list of at least 3 months. She was unable to find immediate treatment for Breanna. Another community agency located a dentist who would give dental care to Breanna over the course of three appointments. At her first appointment on April 26, 2000, the dentist filled two molars. Subsequently, the dentist canceled the two following appointments. The community agency was unable to refer any other dentists. Breanna returned to the bottom of the waiting list and was treated in August 2000, and two subsequent appointments were scheduled. At the time of Ms. Hall's deposition, Breanna was receiving regular treatment through United Community and Family Services.

### 3. Lyndsay Hall

Lyndsay Hall is a four-year-old resident of Pawcatuck, Connecticut; she is the sister of plaintiff Breanna Smith and daughter of plaintiff Theresa Hall. Since her dental check-up in November 1998, her mother was unable to locate a regular dental care provider for her up to time of the filing of the complaint. At the time of Ms. Hall's deposition, Lyndsay had an appointment for dental services in October 2000 at the United Community and Family Services dental clinic.

Ms. Hall has never received reminders, notifications, information, educational materials, or any guidance from PHS or the defendant concerning her children's dental care or oral health.

### 4. Theresa Hall

Theresa Hall is an adult resident of Pawcatuck, Connecticut. From the time of her last dental care treatment in November 1998 in Rhode Island, she has been unable to find a local dental care provider who will accept PHS. In early May 2000, Ms. Hall experienced pain and swelling in her left molar and the gum around the tooth. PHS referred Ms. Hall to four dentists, but told her it did not know whether the dentists were accepting Medicaid patients. Two of the four were not accepting Medicaid patients. The other two had three-month waiting lists, and would not schedule dental treatment for Ms. Hall at that time. In late May 2000, Ms. Hall had a fever and went to a local hospital emergency room. The provider there prescribed an antibiotic for what appeared to be an infection in her tooth, but advised her that without dental treatment, the infection was likely to recur. Ms. Hall continues to suffer constant pain from the tooth.

### 5. R.P. and D.J. Poulin

R.P. and D.J. Poulin are, respectively, four-year-old and three-year-old residents of Manchester, Connecticut. They reside with their adoptive parents, who adopted them out of foster care in 1998. They have been Medicaid beneficiaries since infancy and are currently enrolled in PHS for all Medicaid services, including dental care.

Their mother, Karen Poulin, began seeking a regular dental care provider for them in early 1999. She called every dentist in Manchester, Connecticut and some in Vernon, Connecticut, who were not specifically limited to orthodontia—approximately 16 dental offices in all. All the offices stated that they treated children and were accepting new patients, but none of them would provide treatment for Medicaid recipients.

In mid-March 2000, Ms. Poulin located a dentist who was willing to see the children in late June 2000. The dentist only offered her appointments during the morning hours, which created a potential conflict with Ms. Poulin's education schedule. The day before their appointment, when she called to confirm, she was told that the dental office could not verify the children's insurance and would have to cancel their appointment. Subsequently, Ms. Poulin found a dentist to treat her children. R.P. had an appointment in August 2000 and both had an appointment in September 2000.

Ms. Poulin asked for, but did not receive, any assistance from PHS in locating a dentist willing to provide care to her children. Further, she never received reminders, notifications, information, educational materials or guidance from PHS, or from the defendant, concerning her children's dental care or oral health.

## II. *Legal Standard*

■ Rule 23(c)(1) provides: "As soon as practicable after the commencement of an action brought as a class action, the Court shall determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c)(1). A court is to make this determination solely on the allegations of the complaint, which are accepted as true, and may not consider the validity of the plaintiff's claims. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177–78, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); *Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656, 661 n. 15 (2d Cir.1978). This court is to "apply Rule 23 according to a liberal rather than a restrictive interpretation," *Civic Ass'n of the Deaf, Inc. v. Giuliani,* 915 F.Supp. 622, 632 (S.D.N.Y.1996) (citing *Korn v. Franchard Corp.,* 456 F.2d 1206, 1208–09 (2d Cir.

1972)), however, even using a liberal construction, this Court must undertake a " 'rigorous analysis' to assure that the requirements of the Rule are satisfied." *Id.* (citing *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

Rule 23 contains a two-tier test for class certification. First, Rule 23(a) requires class representatives to demonstrate that:

1) the class is so numerous that joinder of all members is impracticable;

2) there are questions of law or fact common to the class;

3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

4) the representative parties will fairly and adequately protect the interests of the class.

In addition to meeting all of the requirements of Rule 23(a), the plaintiff must meet one of the following requirements under Rule 23(b):

1) the prosecution of separate actions by or against the individual members of the class would create a risk of:

a) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class; or

b) adjudications with regard to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications; or that

2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

## III. *Discussion*

### A. *Rule 23(a) Requirements*

#### 1. *Numerosity*

■ The first requirement of Rule 23(a) is that the class be so numerous that joinder of

all members is impracticable. Fed.R.Civ.P. 23(a)(1). The plaintiffs allege that the proposed class consists of the 233,327 individuals participating in the Medicaid managed care program as of April 2000, plus future enrollees. They further allege that the proposed subclass consists of the 182,064 children participating in the Medicaid managed care program and eligible for EPSDT program services as of April 2000, plus future. enrollees. Since this is an action for declaratory and injunctive relief against a government policy which has been in place for some time, the court may also consider persons who might be injured in the future in the class. *See* 1 Newberg, H. and Conte, A., *Newberg on Class Actions,* § 3.07 (3d ed.1992).

The defendant asserts that the plaintiffs do not satisfy the numerosity requirement because the plaintiffs have not documented the existence of individuals other than the named plaintiffs who have suffered the injuries alleged in the complaint.

As to the proposed class, the court finds that it is sufficiently numerous on the basis of statements by the defendant's Director of Medical Administration that DSS is "down to approximately 250 dentists who provide the vast majority of care for over 300,000 Medicaid recipients statewide"; the existence of DSS customer service complaints concerning access to Medicaid dental services; and, the affidavits of Medicaid dental providers attesting to the serious problems in supplying services to Medicaid recipients under the current reimbursement system.

As to the proposed subclass, the court finds that the plaintiff has demonstrated that the proposed subclass is numerous on the basis of the defendant's reports to the Connecticut Medicaid Managed Care Advisory Council ("CMMCAC") that dental services to children covered under Medicaid managed care have not meet the HCFA goal of 80% participation. The defendant has also reported that dental services utilization fell below the EPSDT program requirement that managed care recipients aged 3 through 20 see a dentist every six months. In fact, in the first quarter of 1999, dental services utilization was well below half of the mandated level of participation. In the second and third quarters of 1999, the defendant reported decreasing dental utilization among covered children and youths. In the first quarter of 2000, the defendant reported that of 150,553 eligible 3 to 19 year old children, only 17.7% received dental services—a percentage which is far below that needed to satisfy the EPSDT program requirement that all eligible children see a dentist every six months.

Furthermore, joinder of potential plaintiffs is also impracticable in light of the financial and health status of the proposed class and subclass and the consequent difficulty they may have in obtaining information concerning their rights. *See Ladd v. Thomas,* 3:94CV1184 (JBA), Ruling on Pls.' Mot. for Class Certification (Doc. 15) (D.Conn. Sept. 30, 1996) (citing *United States ex rel. Morgan v. Sielaff,* 546 F.2d 218, 222 (7th Cir. 1976) (joinder is impractical where "many of the class members ... by reason of ignorance, poverty, illness, or lack of counsel, may not ... [be] in a position to seek [a hearing] on their behalf."); 1 *Newberg* § 3.06 ("In a very real sense, only those who are financially able to join a suit, and who know they have a claim, can realistically use the permissive joinder device")).

The court finds that there are tens of thousands of potential class members and concludes that the plaintiffs have satisfied the numerosity requirement. *See Robidoux v. Celani,* 987 F.2d 931, 935 (2d Cir.1993) ("Courts have not required evidence of exact class size or identity of class members to satisfy the numerosity requirement."); 5 *Newberg* § 23.02 ("Courts generally have not required detailed proof of class numerousness in government benefit class actions when the challenged statutes or regulations are of general applicability to a class of recipients, because those classes are often inherently very large.") (citing e.g., *Perez v. Lavine,* 378 F.Supp. 1390 (S.D.N.Y.1974) (recipients of public assistance); *Hurley v. Toia,* 432 F.Supp. 1170 (S.D.N.Y.), *aff'd,* 573 F.2d 1291 (2d Cir.1977) (welfare recipients); *Glover v. Crestwood Lake Section 1 Holding Corps.,* 746 F.Supp. 301, 305 (S.D.N.Y.1990) (low-income housing recipients)).

### 2. *Commonality and Predominance*

■ Rule 23(a)(2) and (3) requires that there be questions of law or fact common to the class which "predominate over questions peculiar to individual members of the class." *Civic Ass'n,* 915 F.Supp. at 632. The plaintiffs contend that all class members will be treated the same with regard to DSS' administration of the Medicaid Husky A program for medical assistance coverage for oral health needs. Each putative class and subclass member receives dental care through the MCO's, which contract with the defendant, under identical terms, to deliver Medicaid-covered services within Connecticut. While there is variation in the specifics of their individual circumstances, the plaintiffs do not allege that they have suffered isolated difficulties, but rather, that they face systemic barriers to finding effective and local dental services. The plaintiffs allege that, due to the policies and practices of the defendant in administering the system, they have been, and will continue to be denied access to adequate and locally accessible preventive and restorative oral health care delivered by dental providers who participate in the Medicaid program. This common fact pattern gives rise to common legal issues, alleging violations of the Medicaid Act and its implementing regulations. Such issues, as to the proposed class, include:

1) whether the defendant has failed to maintain Medicaid reimbursement rates at levels sufficient to enlist enough Connecticut dental providers in the Medicaid managed care program so that dental care is available to Medicaid managed care recipients in Connecticut at least to the extent that such care is available to the general population, in violation of 42 U.S.C. § 1396a(a)(30)(A) and 42 C.F.R. § 447.204;

2) whether the defendant has failed to make dental care for Medicaid managed care recipients available throughout Connecticut in violation of 42 U.S.C. § 1396a(a)(1) and 42 C.F.R. § 431.50(b)(1);

3) whether the defendant's dental provider reimbursement rates are so unreasonable that dental care is unavailable or obtained only after great delay and harm to the health of Connecticut Medicaid recipients, in violation of 42 U.S.C. § 1396a(a)(30)(A) and 42 C.F.R. § 447.204;

4) whether because of inadequate reimbursement rates and burdensome claims processing requirements, the defendant has failed to ensure proper incentives for adequate provider participation, resulting in a failure to provide proper and efficient operation of the Medicaid program, to give Medicaid recipients needed care with reasonable promptness and to ensure that care is provided in a manner consistent with simplicity of administration and the best interests of recipients, in violation of 42 U.S.C. §§ 1396a(a)(4), (8) and (19); and

5) whether the defendant's failure to ensure adequate participation by Connecticut dental providers in Medicaid has created a situation where some Medicaid managed care recipients are able to obtain sufficient dental care and others are not, in violation of 42 U.S.C. § 1396a(a)(10)(B)(i) and 42 C.F.R. § 440.230.

Issues common to the members of the subclass include:

1) whether the defendant fails to effectively inform Medicaid recipients under age 21 of the availability of early and periodic screening, diagnostic and treatment services, including dental services, and of the benefits of preventive dental health care, in violation of 42 U.S.C. § 1396a(a)(43), 42 C.F.R. § 441.56(a), and HCFA *State Medicaid Manual* § 5121;

2) whether the defendant fails to provide or arrange for provision of periodic dental screening to assess the plaintiffs' dental health, diagnostic dental services and treatment identified during the dental screenings, in violation of 42 U.S.C. §§ 1396a(a)(43)(B) and 1396d(r)(1)(A), 42 C.F.R. §§ 441.56(b)(1)(vi) and 441.56(c), and HCFA *State Medicaid Manual* §§ 5510, 5310 and 5124; and

3) whether the defendant fails to provide case management services, transportation and scheduling assistance to enable plaintiffs to obtain dental services required under the EPSDT program, in violation of 42 U.S.C. §§ 1396a(a)(43)(B) and 1396d(a)(19), 42

C.F.R. § 441.62, and HCFA *State Medicaid Manual* §§ 5150, 5310 and 5340.

Accepting as true the allegations of the complaint, the court finds that the plaintiffs have alleged that their individual claims derive from a continuing, systemic policy and practice of the defendant of failing or refusing to address a severe shortage of Medicaid recipient access to adequate dental care provider services in Connecticut, which affects the entire proposed class and subclass. *See Phelps v. Harris*, 86 F.R.D. 506, 512 (D.Conn.1980) ("a practice of general applicability ... necessarily affects the entire plaintiff class"). Moreover, if the plaintiffs prevail on the merits, they will establish that this policy and practice is illegal as applied to all similarly situated individuals. *Id.*

### 3. *Typicality*

■ Rule 23(a)(3) requires that the plaintiffs establish that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." F.R.C.P. 23(a)(3). "In government benefit class actions, the typicality requirement is generally satisfied when the representative plaintiff is subject to the same statute, regulation, or policy as class members." 5 *Newberg* § 23.04; *see also Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir.1968); *Robidoux v. Celani*, 987 F.2d 931, 936–37 (2d Cir.1993) ("When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims.") (citations omitted).

### 4. *Fair and Adequate Representation*

Finally, Rule 23(a)(4) requires the plaintiffs to make a two-fold showing that their attorneys are competent to conduct the litigation and that the named plaintiffs do not have interests adverse to the class. *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir.1992). The defendant does not contest that the plaintiffs' counsel, from the Greater Hartford Legal Assistance, Inc. and Connecticut Legal Services, Inc., are competent to conduct this litigation. Neither does the defendant contest that the named plaintiffs do not have interests antagonistic to those of the putative class and subclass.

### B. *Rule 23(b)*

■ The plaintiffs seek to comply with Rule 23(b) by satisfying the requirements of subsection (b)(2):

> the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Fed.R.Civ.P. 23(b)(2). Here, DDS is the "single state agency," 42 U.S.C. § 1396a(a)(5), charged with administering the Medicaid program in Connecticut. Although the state contracts with MCO's pursuant to a waiver obtained from HCFA allowing the state to restrict the plaintiffs' right to choose among Medicaid providers, its duties relative to ensuring that the plaintiffs receive medical services with reasonable promptness are non-delegable. *See e.g.,* 42 U.S.C. § 1396a(a)(5); 42 C.F.R. 431.10; *Catanzano v. Dowling*, 60 F.3d 113, 118 (2d Cir.1995) ("It is patently unreasonable to presume that Congress would permit a state to disclaim federal [Medicaid] responsibilities by contracting away its obligations to a private entity."). Indeed, the managed care waiver granted by HCFA was conditioned upon DSS' continued satisfaction of "statutory and regulatory requirements for recipients' access to care and quality of services," and its provision of a program that would "be a cost-effective and efficient means of providing health care services to Medicaid recipients." Bell Aff., Attach. 2 at Exh. 5. Thus, the court finds that because the continuance of defendant's policies and procedures in administering the Husky A Medicaid program may require injunctive relief applicable to the class as a whole, Rule 23(b)(2) has been satisfied.

### C. *Standing*

As noted by the defendant, "[i]t is axiomatic that the judicial power conferred by Article III may not be exercised unless the plaintiff shows 'that he personally has suffered

some actual or threatened injury as a result of the putatively illegal conduct of the defendant.'" *Blum v. Yaretsky*, 457 U.S. 991, 999, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) (quoting *Gladstone, Realtors v. Village of Bellwood*, 441 U.S. 91, 99, 99 S.Ct. 1601, 60 L.Ed.2d 66 (1979)). "This general rule applies equally to class actions by requiring that if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class. Generally, a plaintiff satisfies the standing requirement if he has a personal stake in the outcome of the controversy, as measured by a distinct and palpable injury, which is causally connected to the conduct being charged against the defendant." *Catanzano by Catanzano v. Dowling*, 847 F.Supp. 1070, 1076 (W.D.N.Y.1994) (internal citations and quotations omitted). In addition, "[a] litigant must be a member of the class he or she seeks to represent at the time the class action is certified by the district court." *Sosna v. Iowa*, 419 U.S. 393, 403, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *see also Pavlak v. Duffy*, 48 F.R.D. 396, 398 (D.Conn.1969).

The defendant argues that the named plaintiffs do not have standing as members of the class they seek to represent because their claims for declaratory and injunctive relief are moot as a result of the fact that they have received dental services since the filing of the complaint. The premise for this argument by the defendant, however, is an inappropriately narrow reading of the plaintiffs' claims. The plaintiffs here do not simply make claims for dental services. Nor do they each allege isolated difficulties in obtaining dental care. Rather, each alleges that due to a continuing and systemic policy and practice of the defendant in administering the system for delivery of Medicaid-covered dental services in Connecticut, he or she has been and will continue to be denied access to adequate and locally accessible preventive and restorative oral health care delivered by dental providers participating in the Medicaid program. Thus, although each plaintiff alleges that he or she has in the past been denied access to dental services—in other words, that he or she has suffered an injury causally connected to the alleged conduct of the defendant—each also alleges that his or her individual claim derives from a continuing, systemic policy and practice of the defendant of failing or refusing to address a severe shortage of Medicaid recipient access to adequate dental care provider services in Connecticut. Moreover, even where a plaintiff has received dental services since the filing of the complaint, because the plaintiffs allege that the defendant's policy and practice is continuing and that the plaintiffs' needs for dental care are ongoing, the plaintiffs remain at risk of future harm by virtue of the alleged policy and practice of the defendant.[1]

## IV. Conclusion

For the reasons set forth above, the plaintiffs meet all of the requirements of Fed. R.Civ.P. 23, and their Motion for Class Certification (Doc. # 3) is hereby GRANTED. A plaintiff class consisting of all individuals in Connecticut who are or will be eligible for Medicaid managed care Husky A benefits, and are or will be seeking dental health services, is hereby certified under Rule 23. A plaintiff subclass consisting of all children in Connecticut who are now or will be under the age of 21, are or will be seeking dental health services, and are or will be eligible for Medicaid managed care Husky A benefits, is hereby certified under Rule 23.

It is so ordered.

---

1. The court notes that, for substantially the same reasons, it finds unpersuasive the defendant's argument that the "capable of repetition yet evading review" doctrine, which is applicable when the duration of a challenged action is too short to be fully litigated prior to its cessation or expiration and there is a reasonable expectation that the same plaintiff will be subjected to the same action again, would not apply to the plaintiffs, were it necessary for the court to reach that issue. *See Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982); *S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515, 31 S.Ct. 279, 55 L.Ed. 310 (1911); *Granato v. Bane*, 74 F.3d 406, 411 (2d Cir.1996).